[No. B023346. Second Dist., Div. Four. Sept. 16, 1987.]

In re the Marriage of DEBRA D. and DONALD A. BROCKMAN.
DEBRA D. BROCKMAN, Appellant, v.
DONALD A. BROCKMAN, Respondent.

COUNSEL

Lurvey & Shapiro, Ira H. Lurvey and Judith Salkow Shapiro for Appellant.

Hahn & Hahn, William S. Garr and Don Mike Anthony for Respondent.

OPINION

KINGSLEY, Acting P. J.—Wife appeals the denial of her motion to vacate following a judgment of dissolution. We reverse.

The issue on appeal is whether wife can set aside a property and custody settlement agreement that she signed to end the parties' bitter custody dispute. The facts are as follows: In 1984, wife filed for divorce in Pasadena seeking to terminate her five-year marriage to respondent. At the same time, she obtained an ex parte order restraining husband from approaching within 100 yards of herself, the couple's young son, and appellant's 14-year-old daughter. Respondent stated that this action was never served on him, however, and shortly thereafter he filed his own petition for dissolution in Burbank. In spite of the restraining order, appellant allowed respondent to

take the children away for the weekend. Respondent flew the children from Sacramento, where they were staying with appellant, to Los Angeles, and refused to return them. He then applied for, and was granted, his own ex parte order in Burbank awarding him custody of the children.

After some weeks with the children, however, respondent reconsidered and offered to return custody to appellant. Appellant stated that respondent promised to relinquish custody to her at an upcoming order to show cause. According to appellant, however, at the time of the hearing, respondent presented lengthy demands and threatened to keep custody of the children unless appellant agreed. Respondent's attorney wrote out a settlement agreement by hand, in a hallway of the courthouse, which appellant signed. Essentially, appellant gave up all claims to the couple's estimated $400,000 to $800,000 in community property in exchange for sole physical custody of the children. She was allowed to keep $10,000 and a Camaro automobile, and was awarded $500 a month in child support and $300 a month spousal support for 10 years. Husband agreed to forfeit a $100,000 note if he should ever contest the custody or support order.

Eight months later, the judgment of dissolution was signed and entered by the court incorporating the above terms. Appellant moved to vacate the judgment, however, as it contained several provisions which were not a part of the agreement. Respondent indicated that he had no opposition to this motion.

In the meantime, however, appellant changed attorneys. Four months after the judgment was entered, she moved to vacate it in its entirety on the ground that the settlement agreement was coerced. The motion to vacate was denied and this appeal follows.

## I

■■ Ordinarily, the denial of a motion to vacate a judgment is not an appealable order.[1] If the original judgment was appealable—as was the case here—allowing an appeal from the motion to vacate that judgment gives the appellant either two appeals from the same decision, or, if no timely appeal has been made, an unwarranted extension of time in which to bring the appeal. (*Lamb* v. *Holy Cross Hospital* (1978) 83 Cal.App.3d 1007, 1011 [148 Cal.Rptr. 273].) An exception has been recognized, however, where the judgment appealed from is void. There, the denial of a motion to vacate is an order giving effect to a void judgment, and is itself void and appealable.

---

[1] For a lengthy discussion on the appealability of motions to vacate, see 9 Witkin, California Procedure (3d ed. 1985) Appeal, sections 111-114, pages 128-132.

(*In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1020, 1030-1031 [230 Cal.Rptr. 203].) ▆ Appellant argues that the judgment in the instant case is just such a void order.

Appellant's contention is that the court acted in excess of its jurisdiction in approving husband's offer to forfeit the $100,000 note should he ever contest the award of custody or support. In exchange for this promise, husband retained virtually all of the couple's community property. A similar situation was presented in *In re Marriage of Goodarzirad, supra,* 185 Cal.App.3d 1020. There, husband waived all rights to custody and control of his son in exchange for wife's promise to hold him harmless for any ordered child support. Husband appealed and the court concluded that the judgment was in excess of the trial court's jurisdiction and therefore void. As the court noted: ▆ ▆ "The entire scheme underlying custody decrees is that primary consideration must be given to the welfare of the child. [Citation.] The ultimate aim of the court is to serve the best interests and welfare of the minor children. [Citation.] Based on these strong policy reasons, stipulations between parents involving the minor children which attempt to divest the court of jurisdiction are void . . . ." (*In re Marriage of Goodarzirad, supra,* 185 Cal.App.3d at p. 1026.)

▆ The court went on to observe: "'Where the welfare of children is involved as it is in divorce cases, parents cannot by contract so bind themselves as to foreclose the court from an inquiry as to what that welfare requires.' [Citation.] 'The children are not parties to the action for divorce, and the jurisdiction which the statute confers on the court . . . cannot be limited or abridged by the contract of the parties. . . .'" (*In re Marriage of Goodarzirad, supra,* 185 Cal.App.3d at p. 1027.)

▆ The situation presented here is not as extreme as in *Goodarzirad,* where husband waived all rights to custody and wife all rights to support, but the intent and effect are much the same. Should appellant ever become unfit to care for the children or respondent's financial circumstances worsen, review of the custody and support order would be virtually precluded by the punitive forfeiture provision. What is not the same as in *Goodarzirad,* however, is the status of the appealing parties. In *Goodarzirad,* appellant gave up all rights to custody. Appellant has given up no such rights here, however. Rather, she stands to receive $100,000 if respondent ever tries to exercise *his* rights. While this is grounds for respondent to object, it is not something appellant can appeal. ▆ Although this provision is erroneous, errors favorable to an appellant are not subject to review. It is "well settled by statute, case law, and logic that only an aggrieved party may bring the appeal." (*Hensley* v. *Hensley* (1987) 190 Cal.App.3d 895, 898 [235 Cal.Rptr. 684].) "'A fundamental precept of appellate procedure is that "if

the judgment or order is *in favor of a party* he is not aggrieved and cannot appeal." ' " (*Robinson* v. *Superior Court* (1984) 158 Cal.App.3d 98, 107 [204 Cal.Rptr. 366] [italics in original].) ■ This is so even though the judgment is void. In *Maxwell Hardware Co.* v. *Foster* (1929) 207 Cal. 167, 170 [277 P. 327], the court addressed such a situation. There, plaintiff contended that his recovery was void as defendant had never been served with process. The court observed that: "The plaintiff now claims that this judgment is void for the reason that no process was ever served upon said defendant Foster. The judgment, however, was in favor of the plaintiff, and even if the same were void, that fact cannot be taken advantage of on an appeal therefrom by the plaintiff in whose favor the judgment was rendered. An appeal from a judgment can only be taken by an aggrieved party thereto, and the plaintiff herein does not sustain that relation to said judgment. A party cannot appeal from a judgment in his favor."

This reasoning was repeated in a marital dispute context in *Forkner* v. *Forkner* (1950) 96 Cal.App.2d 363 [215 P.2d 482]. There, wife moved to set aside the custody provision of her interlocutory decree of divorce, arguing that the court was without jurisdiction as the minor child was never a resident of this state. The court, citing *Maxwell Hardware Co.* v. *Foster, supra,* 207 Cal. 167, rejected this argument as the appellant was not aggrieved by the error. ■ Such is the situation presented here. While the forfeiture provision is erroneous, it works only to appellant's advantage. Accordingly, on appeal appellant may not urge the error of the provision as a way of invalidating the judgment, in an attempt to obtain a larger share of the couple's community property.[2]

## II

■ Appellant also contends that the judgment is void as the north central district court in Burbank had no jurisdiction over the parties. According to appellant, husband fraudulently misrepresented that he was living in Glendale in the north central district, but later acknowledged that he resided only in Pasadena in the northeast district.

Appellant bases this conclusion on respondent's answer during his deposition. Husband was asked: "The totality is that since around 1980, to pick a fixed year, your residence has been at 665 Cliff Drive, [in Pasadena] and your office at 9209 East Lower Azusa Road in Rosemead; correct, sir?

"Yes.

---

[2] We do not foreclose a collateral attack on this provision, however, at some other stage where the rules of appellate procedure do not apply.

"Q. And that's been the total condition since then?

"A. Yes.

"Q. Right up to the present; correct?

"A. Yes."

Respondent in a declaration, however, stated: "On January 18, 1985 [the day husband's dissolution petition was filed], I was actually living at a home I had owned for quite some time at 325 Winchester, Glendale, California."

Faced with disparate evidence on appeal, we must assume to be true those facts that support the trial court's rulings. Even were this not so, however, nothing in respondent's deposition answer demonstrates fraudulent misrepresentation. Appellant has produced no admission of fraud, and did not bother to ask why respondent had listed his address as Glendale in his dissolution petition if his residence was in Pasadena. The answer to this is found in the trial court's tacit assumption that it was more likely that respondent misapprehended a deposition question than that he had lied about his place of residence. In this we find no error. The trial court heard the evidence and properly concluded that respondent was living in Glendale at the time the petition was filed. Accordingly, appellant may not appeal the judgment as void for want of jurisdiction.

### III

An exception to the general rule that the denial of a motion to vacate is nonappealable is also recognized where there is no effective appeal from the judgment. For example, if the record made at the time of the judgment does not disclose the grounds for appeal, it is pointless to require the party to appeal directly from the judgment. (*Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 388-389 [38 Cal.Rptr. 693].) Such cases frequently arise where the error complained of occurs around the time the judgment is entered or afterwards. The only way to bring the issue to the attention of the trial court or to make a record for appeal is by bringing a motion to vacate. In such instances, the denial of the motion to vacate is then appealable. (*Cope* v. *Cope* (1964) 230 Cal.App.2d 218, 228-229 [40 Cal.Rptr. 917].)

Appellant argues that this exception is applicable here as there was no record of duress at the time the judgment was entered. It was only by bringing a motion to vacate that the issues of duress and coercion could be raised for the first time. Appellant argues, therefore, that the motion to

vacate should be appealable, as an appeal from the judgment would not have allowed these issues to be addressed.

Respondent argues that appellant's appeal is barred, however, by the delay in bringing the motion to vacate. Eight months passed before the judgment was entered and appellant waited an additional four months after that before claiming that the settlement agreement was coerced. Respondent argues that appellant, having accepted the benefits of the judgment, has no appeal therefrom. (*Wilson* v. *Wilson* (1958) 159 Cal.App.2d 330, 333-334 [323 P.2d 1017].)

 As the court noted, however, in *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 744 [131 Cal.Rptr. 873, 552 P.2d 1169]: "The settled rule that the voluntary acceptance of the benefits of a judgment will bar appeal therefrom [citations] is subject to qualifications applicable to this case. First, the appellant must demonstrate a clear and unmistakable acquiescence in, or, to put it another way, an ' "unconditional, voluntary, and absolute" ' acceptance of, the fruits of the judgment. [Citations.] Furthermore, where the benefits accepted are those to which the appellant would be entitled even in the event of reversal, acceptance thereof does not bar prosecution of the appeal. [Citations.] Thus, '[i]f the appeal is only from a portion of a judgment in which the issues are severable, the portions from which no appeal is taken may become final and beyond the scope of review of the appellate court [citations]; and so where the judgment clearly establishes the appellant's right to recover but the amount is less than he demands, he may accept it and nevertheless appeal, claiming the larger recovery. [Citations.]' [Citation.]"

 In the instant case, the judgment awarded appellant custody of the children, a modest amount of child and spousal support, $10,000 and a Camaro automobile. Husband retained the remaining $400,000 to $800,000 in community assets. Let us take these benefits one at a time. It should be clear from the above that the award of custody is not something subject to the control of the parties but is under the continuing review of the court. Receiving custody of the minor children, therefore, cannot be characterized as a benefit one has accepted. As to the award of the child and spousal support, the court in *Fonstein* noted "it has often been recognized that these items are severable from the portion of the judgment in a dissolution proceeding dividing the community property and that an appeal therefrom is not barred by acceptance of these items." (*In re Marriage of Fonstein, supra,* 17 Cal.3d at p. 745.) This reasoning applies equally well to the award of child custody. This leaves the $10,000 and the Camaro automobile that appellant can be considered to have accepted. As the court observed, however, in *Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 214 [259 P.2d

656]: ■■■ "'It is only in cases where an appellant is shown to have received and accepted advantages from a judgment to which such appellant would not be entitled in the event of a reversal of the judgment that her acceptance thereof has been held to operate to defeat the appeal.'"

■■■ While we cannot be certain that appellant here will receive a greater share of the community property on remand, it is inconceivable that she might receive less. We therefore hold that the appeal is not barred by appellant's having accepted the benefits of the judgment.

■■■ Respondent also contends that the appeal is prohibited as it is taken from a consent judgment. Ordinarily, a party may not appeal a judgment to which it has consented. (See *Tracy* v. *Tracy* (1963) 213 Cal.App.2d 359 [28 Cal.Rptr. 815].) This would be applicable here, however, only if appellant signed the settlement agreement of her own free will without duress or coercion. ■■■ Unless this is so, the judgment will have the outward appearance of a consent judgment—the consent, however, will be missing. As the existence of consent is the question on appeal, it would be erroneous to regard this issue as settled simply by the forms of the judgment. To do as respondent asks and hold that an appellant cannot appeal a consent judgment, when she claims never to have consented, is absurd.

## IV

■■■ Having determined that appellant can appeal the denial of her motion to vacate, we now reach the merits of the case.[3] As one would expect, the question whether respondent coerced appellant into signing the settlement agreement by threatening to deprive her of her children is closely contested by the parties. On the one hand, the manifest inequality of the settlement agreement, the hurried circumstances of its drafting, and husband's history of violent behavior all contribute strongly to the conclusion that appellant was under duress. Moreover, as the court noted in *In re Marriage of Gonzalez* (1976) 57 Cal.App.3d 736, 747-748 [129 Cal.Rptr. 566]: "The involvement of the children that automatically raises the issue of their welfare places this type of litigation in an arena of its own. The emotions and fears of the parties are more intense and are not comparable to litigants in a normal civil action. If threatened use of a custody hearing can cause so much fear in the mind of the responding parent that contractual volition is destroyed, the court is not required to legally recognize the agreement when equity demands otherwise." On the other hand, supporting respondent's position is the fact that appellant waited more than a year to

---

[3] Appellant also requests that her motion to vacate be construed as a request for relief under Code of Civil Procedure section 473. This we cannot do, however, as the issue is raised for the first time on appeal.

raise the issue of coercion and was undeniably represented by counsel throughout all the proceedings. No finding on the issue of duress, however, was made by the trial court.[4] Rather, the court relied on *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051 [202 Cal.Rptr. 116], for the proposition that once a settlement agreement is incorporated into a judgment, it may only be set aside for extrinsic fraud.

 *Stevenot* represents one of the latest and most able attempts to distinguish between intrinsic and extrinsic fraud. As *Stevenot* notes: "The primary architect of California's laws on the extrinsic-intrinsic fraud issue in family law cases has been one of its judicial superstars, Justice Roger Traynor. Over 40 years ago, Justice Traynor wrote, 'The final judgment of a court having jurisdiction over persons and subject matter can be attacked in equity after the time for appeal or other direct attack has expired only if the alleged fraud or mistake is extrinsic rather than intrinsic [citations]. Fraud or mistake is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court [citations]. If an unsuccessful party to an action has been kept in ignorance thereof [citations] or has been prevented from fully participating therein [citation], there has been no true adversary proceeding, and the judgment is open to attack at any time. A party who has been given proper notice of an action, however, and who has not been prevented from full participation therein, has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary. [Citations.] Fraud perpetrated under such circumstances is intrinsic, . . .'" (*In re Marriage of Stevenot, supra,* 154 Cal.App.3d at p. 1061.)

*Stevenot* then goes on to define extrinsic and intrinsic fraud: "Fraud is extrinsic where the defrauded party was deprived of the opportunity to present his or her claim or defense to the court, that is, where he or she was kept in ignorance or in some manner, other than from his or her own conduct, fraudulently prevented from fully participating in the proceeding."

". . . . . . . . . . . . . . . . . .

"Any fraud is intrinsic if a party has been given notice of the action and has not been prevented from participating therein, that is, if he or she had the opportunity to present his or her case and to protect himself or herself from any mistake or fraud of his or her adversary, but unreasonably neglected to do so." (*In re Marriage of Stevenot, supra,* 154 Cal.App.3d at pp. 1068-1069.)

---

[4] The closest the court comes is saying that appellant "participated" in the settlement agreement. This does not reflect, however, whether her participation was or was not coerced.

The trial court evidently concluded that this encompassed the entire universe of grounds on which a judgment might be set aside. It does not. The briefest scrutiny demonstrates that there are many conditions that cannot be characterized as either extrinsic or intrinsic fraud, even with resort to the most procrustean measures. This is because the distinction between intrinsic and extrinsic fraud refers only to claims of fraud—that is mistake or misrepresentation by the opposing party. Grounds other than fraud have long been recognized as also permitting a judgment to be set aside. As the court observed in *Zastrow v. Zastrow* (1976) 61 Cal.App.3d 710, 716 [132 Cal.Rptr. 536]: "Fraud and mistake are the usual but not the only grounds for equitable relief from a judgment. The leading California case in this area (*Olivera v. Grace, supra,* [(1942) 19 Cal.2d 570]) involved an attack upon a judgment allegedly procured through the mental incompetence of the plaintiff's decedent. The decedent had suffered a head injury which resulted in unadjudicated mental incompetence, was served with papers in a deed reformation action and suffered a default at the hands of the plaintiff in that action. The Supreme Court sustained the claim as one justifying relief; spoke of equity's power 'to relieve incompetent defendants from judgments taken under circumstances of unfairness and injustice;' mentioned extrinsic fraud and extrinsic mistake as 'typical of the situations' in which equity interferes with final judgments; quoted from an authoritative text which posits accident (as well as fraud and mistake) as a ground of relief; finally voiced the following general rule: 'One who has been prevented by extrinsic factors from presenting his case to the court may bring an independent action in equity to secure relief from the judgment entered against him.' [Citation.] [¶] The quintessential basis for equitable relief from the judgment is not that the wife was defrauded or mistaken; rather, that some kind of disability deprived her of 'a fair opportunity fully to submit her case to the court.' [Citation.] *Olivera* demonstrates that fraud or mistake are not the exclusive grounds; that equity, indeed, does not limit the kinds of disability which justify relief."

*Stevenot* itself recognizes that duress is neither intrinsic or extrinsic fraud, but is still a ground for setting a judgment aside. *Stevenot* states: "It appears from Pamela's declaration in support of her motion that she is torn between whether to allege her failure to seek an attorney sooner was due to duress by Richard or because of extrinsic fraud committed by him. Duress is to be distinguished from extrinsic fraud, although, if proven, it is a valid ground to set aside a judgment and marital settlement agreement." (*In re Marriage of Stevenot, supra,* 154 Cal. App.3d at p. 1073, fn. 6.)

Accordingly we conclude that the trial court was in error by failing to determine whether appellant's consent to the settlement was coerced. If the trial court should so decide, it must vacate the judgment and settlement

agreement. The instant order denying the motion to vacate is therefore reversed and remanded to the trial court for further proceedings. Appellant to recover costs.

McClosky, J., and Munoz, J.,* concurred.

A petition for a rehearing was denied October 15, 1987, and on October 16, 1987, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied December 3, 1987.

---

* Assigned by the Chairperson of the Judicial Council.