[No. G038119. Fourth Dist., Div. Three. Oct. 23, 2008.]

SATCHMED PLAZA OWNERS ASSOCIATION, Plaintiff and Appellant, v. UWMC HOSPITAL CORPORATION et al., Defendants and Appellants.

COUNSEL

Greenberg Glusker Fields Claman & Machtinger, Norman H. Levine and Aaron B. Bloom for Plaintiff and Appellant.

Allen Matkins Leck Gamble Mallory & Natsis, Lawrence D. Lewis, A. Kristine Floyd and Brian R. Bauer for Defendant and Appellant UWMC Hospital Corporation.

James W. Lundquist for Defendants and Appellants WMC-SA, Inc. and Integrated Healthcare Holdings, Inc.

OPINION

**MOORE, J.**—A cantankerous dispute between the owners of various hospitals and medical offices and an owners association that manages certain of the medical offices has given rise to three lawsuits, one of which is at issue on this appeal. The particular judgment before us pertains to the rights of Satchmed Plaza Owners Association (Satchmed) to exercise a right of first refusal with regard to the sale of a number of medical offices. The court ordered UWMC Hospital Corporation (UWMC) to offer to sell 22 medical offices held in fee (the 22 owned units) to Satchmed. The offer was made, as directed by the judgment, and accepted. The judgment also held that UWMC need not offer to sell leasehold interests in 12 other medical offices (the 12 leased units) to Satchmed. In addition, it contained a finding that there was no prevailing party.

Satchmed appeals from the portions of the judgment pertaining to the 12 leased units and the prevailing party finding. UWMC, and certain other defendants in the underlying litigation, WMC-SA, Inc. (WMC-SA), and Integrated Healthcare Holdings, Inc. (IHHI), have filed protective cross-appeals. While they challenge certain trial court rulings, they seek affirmance of the judgment as to the 12 leased units and as to the prevailing party finding. At the same time, they argue that Satchmed has waived its right to appeal from the judgment, inasmuch as it has accepted the benefits of the judgment by purchasing the 22 owned units. We agree.

Satchmed did not proceed under risk of forfeiture in choosing to purchase the 22 owned units, and the portions of the judgment pertaining to the 12 leased units and the prevailing party status are not severable. Satchmed

attempts to use clever timing to convert a nonseverable judgment into a severable one. We look here at the judgment at the time it was entered, before any party appealed therefrom. At that point in time, it is clear that the judgment was not severable. A ruling pertaining to the 12 leased units easily could have affected the 22 owned units, and vice versa. But Satchmed seized the portion of the judgment beneficial to itself, and took title to the 22 owned units. It then said that no ruling on the 12 leased units could possibly affect the status of the 22 owned units. In other words, it had then put the 22 owned units beyond the reach of UWMC's attack and beyond the purview of this court. Satchmed's claim that the judgment was then severable is essentially a claim that the judgment had become severable because Satchmed had made it so. It does not work that way. Satchmed cannot have its cake and eat it too. Having accepted the benefits of the portion of the judgment making title to the 22 owned units available to it, it cannot now attack the portion of the judgment making title to the 12 leased units unavailable to it.

Satchmed's appeal is dismissed on the basis of waiver. The protective cross-appeals of UWMC, WMC-SA, and IHHI are dismissed as moot.

I

FACTS

At issue is a medical office complex located adjacent to Western Medical Center—Santa Ana. The complex consists of 72 condominium units used as medical offices. The complex is subject to a Declaration of Covenants, Conditions and Restrictions for Satchmed Plaza, dated September 29, 1982, and recorded on December 6, 1982, in the official records of Orange County, California as instrument number 82-424792 (CC&R's).

As of September 29, 2004, UWMC held fee title to the 22 owned units and leasehold interests in the 12 leased units. On that date, UWMC, IHHI, and certain other parties, entered into an, "Asset Sale Agreement" pursuant to which IHHI agreed to purchase four hospitals, including Western Medical Center—Santa Ana, and certain other assets, including the 22 owned units and the 12 leased units, for a total price of $70 million, subject to certain adjustments not material here. Pursuant to a second amendment to the Asset Sale Agreement, the closing date was set for February 28, 2005.

Under section 14.01 of the CC&R's, Satchmed, as the owners association responsible for the management of the medical complex, had a right of first refusal in connection with the sale of any unit or the assignment of a leasehold interest in any unit in the complex. Shortly before close of escrow, the parties to the Asset Sale Agreement realized that Satchmed had a right of

first refusal as to the 22 owned units. UWMC requested that Satchmed waive its right of first refusal. Satchmed declined.

On February 28, 2005, UWMC notified Satchmed that it had obtained an offer from IHHI for the purchase of the 22 owned units for a price of $5 million. It provided a copy of IHHI's offer to Satchmed and provided Satchmed an opportunity to exercise its right of first refusal to purchase the 22 owned units, no later than March 21, 2005.

The parties to the Asset Sale Agreement then entered into a third amendment thereof. Pursuant to that amendment, the closing date was rescheduled to March 7, 2005. The purchase price was reduced by $5 million and the 22 owned units were excluded from the sale, with certain qualifications. The third amendment reflected that UWMC had offered to sell the 22 owned units to Satchmed for $5 million. However, if Satchmed declined to exercise its right of first refusal by March 24, 2005, or subsequently failed to complete the purchase of the 22 owned units, IHHI would then purchase them from UWMC for the $5 million. In that case, the rights and obligations of UWMC and IHHI with respect to the 22 owned units would be governed by the Asset Sale Agreement.

As contemplated by the third amendment to the Asset Sale Agreement, the 12 leased units were transferred on March 7, 2005. Inasmuch as IHHI had assigned certain of its rights under the Asset Sale Agreement to WMC-SA, title to the 12 leasehold interests was taken by that entity, not IHHI.

Satchmed viewed the $5 million sales price as arbitrary and unfair and declined to exercise its right of first refusal to purchase the 22 owned units at that price. Rather, on March 17, 2005, Satchmed filed a complaint for breach of contract, specific performance, and injunctive and declaratory relief against UWMC and WMC-SA.[1] Satchmed alleged that UWMC had failed to comply with the provisions of the CC&R's regarding the right of first refusal.

---

[1] We note that the dispute between the parties engendered two additional lawsuits. On April 27, 2006, UWMC filed the second action, an application to compel Satchmed to hold an annual meeting for the purpose of electing a board of directors. (*UWMC Hospital Corp. v. Satchmed Plaza Owners Assn.* (Super. Ct. Orange County, 2006, No. 06CC00932).) The court granted the application in pertinent part. On August 11, 2006, UWMC and WMC-SA filed the third action, a complaint for a declaration of voting rights and a new election of directors. (*UWMC Hospital Corp. v. Satchmed Plaza Owners Assn.* (Super. Ct. Orange County, 2006, No. 06CC08985).) In that action, UWMC and WMC-SA sought a judgment declaring that WMC-SA was entitled to vote on behalf of the 12 leased units and the August 7, 2006 election was null and void because WMC-SA had not been permitted to vote, and ordering that a particular named individual replace a different director, or in the alternative, ordering that a new election be ordered. The third action resulted in a ruling in favor of UWMC and WMC-SA.

Satchmed sought orders requiring UWMC to comply with those provisions and an injunction barring the transfer of any condominium unit absent such compliance, a declaration that all transfers made in violation of those provisions were void, and for damages and costs, including attorney fees. UWMC filed its answer asserting numerous defenses, including waiver and unclean hands.

By its November 16, 2006 judgment, the court ordered UWMC to offer Satchmed the opportunity to purchase the 22 owned units for the total price of $4,774,575. The court held that UWMC was not required to offer Satchmed the right to purchase an assignment of the 12 leased units, inasmuch as the law does not require an idle act and Satchmed would be unable to obtain the two-thirds vote of the condominium unit owners required to authorize the exercise of the right of first refusal. In addition, the court found that there was no prevailing party.

On November 20, 2006, UWMC did, in compliance with the judgment, offer to sell the 22 owned units to Satchmed for the price of $4,774,575. Then, on November 28, 2006, the judgment was amended. The amended judgment adjusted the price of the 22 owned units to $4,726,830. On December 4, 2006, Satchmed accepted the offer to purchase the 22 owned units for the amended price of $4,726,830.

On January 16, 2007, Satchmed filed its notice of appeal from the portions of the judgment pertaining to the 12 leased units and the prevailing party finding. On January 31, 2007, UWMC filed a notice of cross-appeal. On February 1, 2007, IHHI and WMC-SA filed their notice of cross-appeal.

UWMC filed an ex parte application for an order directing Satchmed to deposit the purchase price of the 22 owned units with the court, with a hearing date of February 1, 2007. UWMC argued that the only way for it to preserve its arguments pertaining to the 22 owned units was for the purchase price to be deposited with the court, so that it would not be considered to have accepted the benefits of the judgment. The court denied UWMC's application. On February 2, 2007, UWMC transferred title to the 22 owned units to Satchmed.

## II

## DISCUSSION

### A. *Request for Judicial Notice*

As a preliminary matter, we address Satchmed's request for judicial notice of two recorded deeds and of documents filed in two related actions. UWMC,

WMC-SA and IHHI do not oppose the request. The request for judicial notice is granted. (Evid. Code, § 452, subds. (d), (h).)

## B. *Introduction*

In its opening brief, Satchmed raises only two issues: (1) whether the trial court erred in denying it an opportunity to purchase the 12 leased units on the basis that Satchmed could not obtain the two-thirds vote of the condominium unit owners authorizing it to exercise the right of first refusal; and (2) whether the trial court erred in finding there was no prevailing party. UWMC, WMC-SA and IHHI contend that the trial court did not err in ruling on the basis of the two-thirds vote requirement and that, in any event, there are many other grounds for affirming the trial court's ruling, including: (1) the 12 leases would have terminated automatically on any attempt by Satchmed to exercise the right of first refusal; (2) Satchmed waived the right of first refusal with respect to the 12 leased units; (3) Satchmed was precluded from exercising the right of first refusal because of unclean hands; and (4) Satchmed's failure to apply the right of first refusal in a uniform, nondiscriminatory, and fair manner rendered the right unenforceable.

In addition, UWMC, WMC-SA and IHHI argue that Satchmed has waived its right to appeal, by accepting the benefits of the judgment. Satchmed, in turn, contends UWMC has waived its right to appeal, for the same reason, and that WMC-SA lacks standing. As we shall show, the question of whether Satchmed has waived its right to appeal is dispositive, and we need not address the other issues.

## C. *Waiver Analysis*

### (1) *Consequence of acceptance of benefits*

■ " 'It is the settled rule that the voluntary acceptance of the benefit of a judgment or order is a bar to the prosecution of an appeal therefrom. [Citations.]' [Citation.] The rule is based on the principle that 'the right to accept the fruits of the judgment and the right to appeal therefrom are wholly inconsistent, and an election to take one is a renunciation of the other. [Citation.]' [Citation.]" (*Epstein v. DeDomenico* (1990) 224 Cal.App.3d 1243, 1246 [274 Cal.Rptr. 521].) Put another way, "acceptance by the appellant of the benefits of a judgment constitutes an '. . . affirmance of the validity of the judgment against him.' [Citation.]" (*Lee v. Brown* (1976) 18 Cal.3d 110, 114 [132 Cal.Rptr. 649, 553 P.2d 1121].) "Although the acceptance must be clear,

unmistakable, and unconditional [citation], acceptance of even a part of the benefit of a judgment or order will ordinarily preclude an appeal from the portion remaining. [Citation.]" (*Epstein v. DeDomenico, supra*, 224 Cal.App.3d at p. 1246.)

"As is so often the case, however, application of the rule has generated a number of equitable exceptions." (*Lee v. Brown, supra*, 18 Cal.3d at p. 115.) For one, "a waiver will be implied [only] where there is *voluntary compliance* with a judgment . . . ." (*Ibid.*) "Thus where compliance arises under compulsion of risk or forfeiture, a waiver will not be implied. [Citations.]" (*Id.* at p. 116.) For another, "one may appeal from a portion of a severable and independent judgment while accepting the benefits of the unaffected remainder of the judgment. [Citations.]" (*Id.* at p. 115.)

Here, Satchmed contends both that it acted under compulsion in purchasing the 22 owned units and that the portions of the judgment from which it appeals are severable. We address these arguments in turn.

### (2) *Compulsion of risk or forfeiture*

Satchmed claims its acceptance of the benefits of the judgment was involuntary. It maintains that UWMC, by making the offer the judgment ordered it to make, put Satchmed in the position of having to either accept the offer to purchase the 22 owned units or lose the right to purchase them. Satchmed's arguments are unconvincing.

As UWMC points out, Code of Civil Procedure section 916, subdivision (a) provides the general rule that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order . . . ." There is no reason why Satchmed could not have filed an appeal from the entire judgment, without fear that its right to accept UWMC's offer would evaporate by the simple act of filing.

Obviously, what Satchmed wanted was to accept the benefit of the favorable portion of the judgment—the right to purchase the 22 owned units, and to attack the unfavorable portions, without risking the possibility that the court could reverse the favorable portion of the judgment. Satchmed intended to neatly effectuate this objective by first accepting UWMC's offer, thereby precluding UWMC from attacking the portion of the judgment unfavorable to it, and second filing its appeal from the portions of the judgment unfavorable to itself (Satchmed).

■ The goal of attacking the unfavorable portions of a judgment without risking the reversal of the favorable portions of the judgment was not the type of compulsion the court in *Lee v. Brown, supra*, 18 Cal.3d 110, described as an exception to the general waiver rule. In *Lee*, for example, the court rendered a judgment in favor of the plaintiff in the amount of $42,366.54, and ordered the defendants' property to be sold under a writ of execution. (*Id.* at pp. 112–113.) Although the defendants appealed, they did not have the wherewithal to post the required undertaking to stay the enforcement of the judgment pending appeal. Consequently, they lost their property at the execution sale. Pursuant to statute, the sheriff tendered the amount of the homestead exemption to the defendants, who accepted it, notwithstanding the pending appeal. (*Id.* at p. 113.) The plaintiff argued that the appeal should be dismissed on the basis that the defendants had accepted the benefits of the judgment when they accepted the amount of the homestead exemption. (*Ibid.*)

The *Lee* court rejected this argument. It observed that under the statutory scheme at issue, the homestead exemption funds were made available only for a period of six months. Since it was likely that the appellate process would take more than six months, if the defendants did not accept the funds tendered by the sheriff, they could lose their right to the same. (*Lee v. Brown, supra*, 18 Cal.3d at pp. 116–118.) In short, the defendants already had lost their property and were compelled to accept the homestead exemption funds or risk forfeiting those as well. (See also *Selby Constructors v. McCarthy* (1979) 91 Cal.App.3d 517, 520–521 [154 Cal.Rptr. 164] [no waiver where defendants pay judgment in order to stop accrual of interest thereon and block threatened execution on their assets]; *Sapin v. Security First National Bank* (1966) 243 Cal.App.2d 201, 207 [52 Cal.Rptr. 254] [no waiver where defendant pays judgment in order to preclude potential foreclosure sale].)

■ Contrast the situation before us. The judgment did not put Satchmed at risk of losing any property it already owned. Furthermore, Satchmed was not at risk of forfeiting monies to which it was entitled by statute if it chose to prosecute an appeal. Satchmed just wanted to aggrandize its award without risk. It simply had to choose whether it wanted to file an appeal in pursuit of an even greater award than the judgment provided to it, which would entail risking a reversal of the favorable portion of the judgment, or whether it wanted to simply accept the benefit of the favorable portion of the judgment, and thereby waive the right to appeal from the unfavorable portions. Having to make a choice of this nature does not make the chosen avenue involuntary.

### (3) *Severability*

#### (a) *general rule*

■ "The well recognized rule is that there may be an appeal from a part of a judgment only if that part is severable. [Citations.] Where portions of a judgment are truly severable, the appellate court is without jurisdiction to consider the parts from which no appeal has been taken. [Citations.] And the appellate court will consider the portion before it independently of the other parts. [Citations.] Modification or reversal of the portion of the judgment from which the appeal has been taken has no effect upon the other portions. [Citations.]" (*American Enterprise, Inc. v. Van Winkle* (1952) 39 Cal.2d 210, 216–217 [246 P.2d 935].)

" 'The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked. [Citations.] "[I]n order to be severable, and therefore [separately] appealable, any determination of the issues so settled by the judgment . . . must not affect the determination of the remaining issues whether such judgment on appeal is reversed or affirmed. . . . Perhaps another way of saying it would be that the judgment is severable when the original determination of those issues by the trial court and reflected in the judgment or any determination which could be made as a result of an appeal cannot affect the determination of the remaining issues of the suit. . . ." [Citation.]' [Citation.]" (*Gonzales v. R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 805–806 [144 Cal.Rptr. 408, 575 P.2d 1190].)

#### (b) *Satchmed's arguments*

Satchmed insists that the judgment here is severable. It says that its appeal raises only two questions: (1) whether the court erred in holding that UWMC need not offer to sell the 12 leased units because Satchmed could not have obtained the two-thirds vote necessary to authorize the exercise of the right of first refusal; and (2) whether the court erred in finding that there was no prevailing party. Satchmed says no decision on appeal addressing those two issues could affect the portion of the judgment pertaining to the 22 owned units. Satchmed also states that this court simply need not revisit the issue of whether Satchmed had a valid and enforceable right of first refusal in order to reverse the trial court's holding with respect to the 12 leased units.

## (c)  *effect of enforceability of right of first refusal*

Satchmed overlooks one fundamental thing. We must uphold the decision of the trial court if it is correct on any ground. (*Virtanen v. O'Connell* (2006) 140 Cal.App.4th 688, 710 [44 Cal.Rptr.3d 702].) In opposing Satchmed's arguments on appeal, UWMC necessarily argues that the denial of the opportunity for Satchmed to purchase the 12 leased units must be upheld not only on the ground pertaining to the two-thirds vote requirement, but on a number of other grounds as well. Certain of these other grounds, if meritorious, would not only support the judgment on the 12 leased units, but would also compel a reversal of the portion of the judgment pertaining to the 22 owned units, were that portion of the judgment before the court. If only the portion of the judgment pertaining to the 12 leased units is put before the court on appeal, this court's decision could lead to inconsistent rulings, such as a ruling by this court that Satchmed had no right to purchase the 12 leased units because the right of first refusal was unenforceable, in contrast with a ruling by the trial court that Satchmed had a right to purchase the 22 owned units because the right of first refusal was enforceable.

Here, the judgment was favorable in part and unfavorable in part as to each party. Any party that chose to appeal, in the hopes of obtaining a reversal of the unfavorable portions, ran the risk that the favorable portions would be the ones that were reversed, because decisions on certain arguments could compel the rulings on the 22 owned units and the 12 leased units to be the same.

UWMC was compelled to make its decision on whether to appeal before any other party was, because it had been ordered to tender an offer to Satchmed "forthwith." It immediately had to choose whether to abide by the judgment and make the tender or to appeal. UWMC, though having suffered an adverse judgment as to the 22 owned units, had to weigh the economic costs of an appeal. If it chose to appeal, it had to consider Code of Civil Procedure section 917.4, which, if held applicable, would have required the posting of an undertaking in order to stay the enforcement of the judgment.[2]

---

[2] Code of Civil Procedure section 917.4 provides in part: "The perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order appealed from directs the sale, conveyance or delivery of possession of real property which is in the possession or control of the appellant or the party ordered to sell, convey or deliver possession of the property, unless an undertaking in a sum fixed by the trial court is given that the appellant or party ordered to sell, convey or deliver possession of the property will not commit or suffer to be committed any waste thereon . . . ." In this appeal, we need not address whether the order directing UWMC to tender the sale of the 22 owned units to Satchmed is tantamount to an order directing the sale of those units, within the meaning of section 917.4.

The amount of the undertaking, based on the $4,726,830 tender price, likely would have been considerable and the lost interest on the amount of the undertaking would have been significant as well. UWMC had to balance these costs against the $273,170 loss it suffered under the judgment, that is—the difference between the price for the 22 owned units as set forth in the third amendment to the Asset Sale Agreement ($5 million) and the price at which it was ordered to tender those units to Satchmed ($4,726,830). Whatever desire UWMC had to pursue an appeal of the unfavorable portion of the judgment, it ultimately decided to comply with the order contained in the judgment. When it did so, it risked being construed as having accepted the benefits of the judgment and having forfeited its right to appeal. In an effort to avoid any such construction, UWMC sought an ex parte application to have the proceeds of the sale to Satchmed deposited into the court, but the court denied the request. UWMC was then boxed into a defensive position, arguably able only to respond to Satchmed's appeal as framed.

Had UWMC chosen to appeal and had the right of first refusal been held unenforceable, there would have been a reversal as to the portion of the judgment with respect to the 22 owned units and the portion of the judgment with respect to the 12 leased units would have remained the same, albeit for a different reason than the one expressed in the judgment. Clearly, this is not a case where we could say that " ' "the original determination of [the appealed] issues by the trial court and reflected in the judgment or any determination which could be made as a result of an appeal [could not] affect the determination of the remaining issues of the suit. . . ." [Citation.]' [Citation.]" (*Gonzales v. R. J. Novick Constr. Co., supra,* 20 Cal.3d at p. 806; see also *In re Marriage of Garrity and Bishton* (1986) 181 Cal.App.3d 675, 690–691 [226 Cal.Rptr. 485] [formula applied to appealed portion of judgment must be applied to unappealed portion also].)

■ " ' "It is only in cases where an appellant is shown to have received and accepted advantages from a judgment to which such appellant would not be entitled in the event of a reversal of the judgment that [his or] her acceptance thereof has been held to operate to defeat the appeal." ' " (*In re Marriage of Brockman* (1987) 194 Cal.App.3d 1035, 1045 [240 Cal.Rptr. 96].) Here, Satchmed accepted the benefit of the purchase of the 22 owned units, a benefit to which it would not have been entitled had the entire judgment been put before the court on appeal and had the right of first refusal been held unenforceable.

(d) *prevailing party ruling*

Furthermore, there is a third portion of the judgment that Satchmed disregards in its arguments on severability. Satchmed seeks a reversal of the

portion of the judgment to the effect that there is no prevailing party. It says, inter alia, that if there is a reversal with respect to the 12 leased units, then it must necessarily be the prevailing party. But the question of the prevailing party is dependent upon both portions of the judgment, that is—who prevails with respect to the 22 owned units and who prevails with respect to the 12 leased units. It is a stretch to even argue that the prevailing party issue has nothing to do with the portion of the judgment pertaining to the 22 owned units. Unquestionably, the portion of the judgment pertaining to the prevailing party status is not severable.

### (e) *change in voting power*

Finally, there is an interesting twist in this case not present in any case Satchmed relies upon. Were the judgment reversed as to the 12 leased units, as Satchmed desires, Satchmed would gain an advantage for its tactics. This is because, having accepted the benefit of the portion of the judgment regarding the 22 owned units, the number of votes Satchmed needs to attract in order to obtain authorization to exercise the right of first refusal as to the remaining 12 leased units has decreased from the number of votes it would have had to attract had it not yet taken title to the 22 owned units.

The voting requirement in question is set forth in section 14.06 of the CC&R's. Section 14.06 provides in pertinent part: "Association shall not exercise any . . . right of first refusal . . . to purchase any Condominium without the prior written consent of 66 2/3% of the Owners of the Condominiums *other than that or those proposed to be purchased or leased.*" (Italics added.)

There are 72 units in the complex. A total of 34 units are at issue in this litigation. While the Asset Sale Agreement, before amendment, contemplated the sale of all 34 units to WMC-SA at once, the third amendment to the Asset Sale Agreement treated the 22 owned units separately from the rest of the assets being sold. Consequently, the trial court characterized the sale of the 22 owned units to be a separate transaction from the sale of the 12 leased units. This being the case, looking at the sale of the 12 leased units in isolation, it determined that, under section 14.06, the consent of two-thirds of the owners of 60 units (calculated as 72 units minus the 12 leased units at issue) would be required to authorize the exercise of the right of first refusal as to the 12 leased units. Two-thirds of 60 would be 40. Since at the date of the judgment UWMC held title to the 22 owned units and would presumably vote against

the exercise of the right of first refusal, that made only 38 units available to vote in favor of the exercise of the right of first refusal. Because 40 votes were required, the trial court concluded that tendering an offer of sale to Satchmed would be an idle act.

On appeal, Satchmed claims the court erred in treating the sale of the 12 leased units as a separate transaction from the sale of the 22 owned units. It emphasizes that if the trial court had treated all 34 units as part of one transaction under the Asset Sale Agreement, the number of required votes would have been different. Then, the consent of two-thirds of the owners of 38 units (calculated as 72 units minus the 34 units at issue) would have been required to authorize the exercise of the right of first refusal as to the 12 leased units. Two-thirds of 38 would be 26, and Satchmed claims there was no evidence that it could not have attracted that number of votes.

Interestingly, Satchmed's primary argument on appeal, regarding the shift in voting power dependent upon whether the sale of the 34 units is characterized as one transaction or as two, provides one more reason why the judgment is not severable. If this court were to agree that the portions of the judgment were severable, and hear only the appeal pertaining to the 12 leased units, Satchmed would need to attract fewer votes than it would were all 34 units put at issue at the same time on a review of the entire judgment as a whole.

With only the 12 leased units at issue, the required number of votes to authorize the exercise of the right of first refusal, once again, would be 40 (two-thirds of 60 units). Only this time, it would be Satchmed that already owned at least 22 units. Satchmed would need to attract only an additional 18 votes to authorize the exercise, compared to the 26 votes it would have needed to attract had all 34 units been treated as part of the same transaction.

By accepting the offer to purchase the 22 owned units and only thereafter filing its appeal, Satchmed increased the likelihood that it would be able to attract enough votes to exercise the right of first refusal with respect to the 12 leased units. So, were we to agree with Satchmed that the portion of the judgment pertaining to the 12 leased units was severable, and if Satchmed were successful on appeal, it would have obtained an advantage it would not have had if it had been successful on an appeal taken from the entire judgment. Given this, the portions of the judgment pertaining to the 22 owned units and the 12 leased units cannot be characterized as severable. (See *Epstein v. DeDomenico, supra,* 224 Cal.App.3d at p. 1246; *In re Marriage of Brockman, supra,* 194 Cal.App.3d at p. 1045.)

## III

## DISPOSITION

The appeal and the two protective cross-appeals are dismissed. UWMC, WMC-SA, and IHHI shall recover their costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.