Filed 2/20/14 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| DARRELL STEINBERG, as President pro Tempore, etc., et al., | C071498 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2012-00117584-CU-MC-GDS) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| JOHN CHIANG, as State Controller, etc., | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on January 24, 2014 (223 Cal.App.4th 338), be modified as follows:

1.      On page 341, in the last sentence of the first paragraph of the opinion, which reads "At that point," change the parenthetical "(or in enrolled legislation)" to "(or in so-called "trailer bills")" and replace existing footnote 1 with the following:

> [1] These are identified as related to the budget in the budget bill. (Cal. Const., art. IV, § 12, subd. (e)(2); see *Harbor v. Deukmejian* (1987) 43 Cal.3d 1078, 1098.)

1

2.	On page 346, in the first sentence of the third full paragraph, which begins "Given that constitutionally no role exists", change the parenthetical "(or enrolled revenue bills)" to "(or trailer bills)".

There is no change in judgment.

Appellant's petition for rehearing is denied.  (**CERTIFIED FOR PUBLICATION**)

BY THE COURT:


       BLEASE       , Acting P. J.


       BUTZ       , J.


       MURRAY       , J.

Filed 1/24/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| DARRELL STEINBERG, as President pro Tempore, etc., et al., | C071498 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2012-00117584-CU-MC-GDS) |
| v. | |
| JOHN CHIANG, as State Controller, etc., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Affirmed.

Diane F. Boyer-Vine, Legislative Counsel, Jeffrey A. DeLand, Chief Deputy Legislative Counsel; Strumwasser & Woocher, Fredric D. Woocher and Michael J. Strumwasser for Plaintiffs and Respondents.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Mark R. Beckington and Ross C. Moody, Deputy Attorneys General, for Defendant and Appellant.

1

Defendant John Chiang, in his official capacity as State Controller (Controller), appeals from a declaratory judgment in favor of plaintiffs Darrell Steinberg and John Pérez in their respective official capacities as President pro Tempore of the Senate and Speaker of the Assembly (collectively, the Legislature).  The trial court concluded that the Legislature complies with the constitutional provision for a balanced budget when it enacts a budget bill in which its revenue estimates for the coming fiscal year exceed the total of existing appropriations for the fiscal year, new appropriations proposed in the budget bill for the fiscal year, and any transfer to the reserve fund.  At that point, the Controller does not have the authority to make an independent assessment that the budget bill is not in fact balanced because it relies on revenues not yet authorized in existing law (or in enrolled legislation),[1] and on that basis withhold the salaries of legislators as a penalty for failing to enact a timely budget.

The Controller appeals, contending declaratory relief should have been denied because this action does not represent an actual controversy, or because his undisputed power to audit the lawfulness of any request for a warrant entitles him to determine whether a budget is *in fact* balanced regardless of any legislative declaration to that effect.  Because the parties are in an ongoing relationship in which this existing dispute over the Controller's asserted authority can arise again in the future, which presents a question of law regarding the interpretation of provisions of the state Constitution in the context of facts inherent in any future such dispute, we do not find a declaration of rights to be purely advisory.  On the merits, we agree with the trial court that the Controller has failed to identify any basis for the exercise of a power to audit the accuracy of legislative estimates of revenues.  We therefore shall affirm the judgment.

---

[1] Enrolled bills have passed both houses of the Legislature and have been sent to the Governor for approval or veto.  (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 40.)

2

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are few. In 2011, the Legislature passed a budget bill on June 15 and sent it to the Governor for signature. The Legislature estimated revenues for the coming fiscal year of $87.8 billion dollars (rounded), and the appropriations in the budget bill (in combination with existing appropriations for the fiscal year) totaled $86.6 billion dollars (rounded).[2] The Governor vetoed it on the next day, declaring that it did not present a "balanced solution" of spending cuts and revenue increases to address the "big deficits for years to come."

The Controller then undertook a determination of whether the budget bill complied with the constitutional provision for a balanced budget. (Cal. Const., art. IV, § 12, subd. (g) [the "balanced budget" provision].)[3] Finding inter alia that some of the identified revenues were based on four bills that the Legislature had yet to pass, the Controller declared on June 21 that the Legislature failed to enact a *balanced* budget by midnight on June 15, which therefore subjected its members to the penalty contained in a 2010 constitutional amendment for failing to enact a budget bill before June 16: forfeiture of their salaries until the presentation of a balanced budget bill to the

---

[2] The Governor had previously suspended the mandated minimum transfer to the Budget Stabilization Account for the upcoming fiscal year (Cal. Const., art. XVI, § 20, subd. (e)), which had a reserve of $1.26 billion (rounded).

[3] In pertinent part, the provision states, "the Legislature may not send to the Governor for consideration, nor may the Governor sign into law, a budget bill that would appropriate from the General Fund, for that fiscal year, a total amount that, when combined with all appropriations from the General Fund for that fiscal year made as of the date of the budget bill's passage, and the amount of any General Fund moneys transferred to the Budget Stabilization Account . . . , exceeds General Fund revenues for that fiscal year estimated as of the date of the budget bill's passage. That estimate of General Fund revenues shall be set forth in the budget bill passed by the Legislature." (Cal. Const., art. IV, § 12, subd. (g).)

Governor.[4]  (Cal. Const., art. IV, § 12, subds. (c)(3) & (h) [the timely budget and forfeiture provisions.)[5]  The Legislature passed a balanced budget on June 28, which the Governor signed into law on June 30.

The Legislature never sought direct judicial review of the Controller's action. Instead, the Legislature filed the instant action in January 2012, seeking a declaration that it complies with the balanced budget provision of the state Constitution when it passes a budget bill in which appropriations (and monies transferred to the reserve account) do not exceed the legislative estimate of revenues, and that the Controller cannot thereafter make a determination that the budget bill was not *in fact* a balanced budget enacted on or before June 15, or enforce that decision by declaring legislative salaries forfeited until the enactment of a balanced budget.  The parties made cross-motions for judgment on the

---

[4]  The Controller also asserted that the Legislature had not fully funded the mandated minimal level of funding for education (Cal. Const., art. XVI, § 8; *California Teachers Assn. v. Hayes* (1992) 5 Cal.App.4th 1513, 1517-1518), although acknowledging that the Legislature could suspend this guarantee on a two-thirds vote.  While the Controller adverts to this identified shortfall in the statement of the facts, the Controller's argument is based on the identification of revenues not yet authorized in law; we accordingly deem this other basis for the decision to withhold legislative salaries to be abandoned. (*108 Holdings, Ltd. v. City of Rohnert Park* (2006) 136 Cal.App.4th 186, 193, fn. 3.) Similarly abandoned is an otherwise unexplained figure in the analysis of the budget (labeled "Liquidation of Encumbrances" and reflecting a reassignment of $770.1 million to expenditures from the Budget Stabilization Account), which is not even mentioned in the Controller's brief on appeal.

[5]  These two provisions state, in relevant part, "The Legislature shall pass the budget bill by midnight on June 15 of each year" and "in any year in which the budget bill is not passed by the Legislature by midnight on June 15, there shall [not] be [any] appropriation from the current budget or future budget to pay any salary or reimbursement for travel or living expenses for Members of the Legislature . . . for the period from midnight on June 15 until the day that the budget bill is presented to the Governor.  No salary or reimbursement for travel or living expenses forfeited pursuant to the subdivision shall be paid retroactively."  (Cal. Const., art. IV, § 12, subds. (c)(3) & (h), respectively.)

4

pleadings. The trial court issued a lengthy minute order explaining the basis for issuing the requested declaratory judgment. This timely appeal followed.

## DISCUSSION

### I. An Actual Controversy Is Present in Which Relief Is Proper

Whether a probable future dispute over legal rights between parties is sufficiently ripe to represent an "actual controversy" within the meaning of the statute authorizing declaratory relief (Code Civ. Proc., § 1060), as opposed to purely hypothetical concerns, is a question of law that we review de novo on appeal. (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885 (*Environmental Defense*).)[6] Whether such actual controversy *merits* declaratory relief as necessary and proper (Code Civ. Proc., § 1061) is a decision within the discretion of the trial court (*Environmental Defense*, at p. 885) except in the extreme circumstances where relief is "entirely appropriate" such that a trial court would abuse its discretion in denying relief (e.g., where there is an ongoing dispute over rights between parties that have an ongoing relationship, even if the dispute arises from past events, and where a declaration provides guidance for future behavior) or where relief would *never* be necessary or proper (e.g., a past dispute between parties lacking an ongoing relationship) (*Osseous Technologies of*

---

[6] In *Environmental Defense*, *supra*, 158 Cal.App.4th at page 885, we noted without elaboration another decision of this court that purported to apply an abuse of discretion standard to this question of law. (*Teachers' Retirement Bd. v. Genest* (2007) 154 Cal.App.4th 1012, 1040 (*Genest*), citing *California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 23-24.) However, the authority *Genest* cited actually involved the separate question of whether declaratory relief was necessary or proper. Moreover, the analysis in *Genest* amounted to our de novo review of the question rather than examining whether the trial court's ruling was reasonable. As a result, *Genest* does not provide a basis for departing from the well-established standard of review.

*America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 365, 367, 370).

In the present case, the parties have an ongoing relationship in the distribution of legislative salaries, and a continuing dispute over whether the facts of the events of 2011 (for which there is a reasonable expectation of recurrence) provide a basis for the legal authority that the Controller claimed and continues to claim. (*Environmental Defense*, *supra*, 158 Cal.App.4th at p. 887.) We reached a similar conclusion in *Gilb v. Chiang* (2010) 186 Cal.App.4th 444, 459-460 (*Gilb*), where even though the dispute arose out of the Controller's past refusal to abide with an executive directive to withhold warrants in excess of federal minimum wage until a budget for the current fiscal year was signed, this was a dispute reasonably likely to recur, given the Legislature's then repeated failures to enact timely budget bills and the clear indication that the Controller would refuse to abide by a similar executive directive in the future, and thus presented an actual controversy. Unlike *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 172, 174 (speculative nature of possible projects and possible conditions on project permits pursuant to challenged guidelines made declaratory relief inappropriate), *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1583 (statement of general intent to acquire property through eminent domain presents too many uncertainties to support declaration in favor of owner), or *Sanctity of Human Life Network v. California Highway Patrol* (2003) 105 Cal.App.4th 858, 871-872 (too many variables to issue declaration regarding right to display signs on overpasses in circumstances other than case at bar), we do not need to guess at any additional facts that are *necessary* to our resolution of the issue. Unlike *Genest*, *supra*, 154 Cal.App.4th at pages 1043-1044 (prospect that the Legislature would again attempt to borrow retirement funds in a manner ruled unauthorized is hypothetical), the Controller is continuing to

litigate his authority to withhold salaries if, as often is the case, the revenues' estimate appearing in a budget bill relies on sources not presently authorized.

In addition, the refusal to grant declaratory relief would work a serious hardship on the Legislature. (*Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 502.) The Legislature should not be put in the position of risking the forfeiture of future salary if its position is not sustained in a future confrontation with the Controller, grounded on the Controller's interpretation of the constitutional provisions at issue here. Declaratory relief is cumulative of any other remedy. (Code Civ. Proc., § 1062.) Availability of an alternative remedy, such as mandate in a future impasse (*Lungren v. Davis* (1991) 234 Cal.App.3d 806, 809-810 [action in mandate to challenge refusal to pay salary]), is not generally a basis for denial of declaratory relief (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 433 [noting exception where statutory remedy indicates it is to be *exclusive*]; *Ermolieff v. R. K. O. Radio Pictures* (1942) 19 Cal.2d 543, 548; *Holden v. Arnebergh* (1968) 265 Cal.App.2d 87, 91-92 [court may decline to grant declaratory relief where *expeditious* alternative remedy exists]). A mandate proceeding is not necessarily expeditious. Each day consumed in the course of a mandate proceeding against the Controller would represent the risk of another day of forfeited wages if the Legislature ultimately did not prevail. We thus find that this action presents an actual controversy, and the trial court reasonably found declaratory relief is necessary and proper.

## II. The Controller Cannot Second-guess Revenue Estimates

At the outset, we address the Legislature's suggestion that the constitutional forfeiture provision applies only to the timeliness of a budget bill and not any *other* substantive constitutional requirement for the budget bill such as the balanced budget provision or the single subject rule (Cal. Const., art. IV, § 9), a point the trial court declined to address. We will assume, as a matter of in pari materia (*Lexin v. Superior*

7

*Court* (2010) 47 Cal.4th 1050, 1091 [where different provisions address same purpose or object, courts should construe them to give effect to all]), that in seeking to enforce the timely presentation of a budget bill the electorate intended that the bill be *otherwise* valid, rather than allow the Legislature to evade the timely budget provision with a sham bill that does not satisfy other constitutional prerequisites.

We begin with a fundamental principle of our state Constitution: its grant of lawmaking authority to the Legislature is plenary (except for the reserved rights of initiative and referendum), which empowers that body to exercise this authority in any manner that is not expressly or through necessary implication prohibited elsewhere in the Constitution. As a result, we must resolve any ambiguity about legislative authority in favor of the Legislature. (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 253-254.)

*All* that the balanced budget provision prescribes for the budget bill is inclusion of a legislative *estimate* of revenues "made as of the date of the budget bill's passage" that exceeds the combination of the total amount of appropriations in the bill, the existing appropriations for the upcoming fiscal year, and transfers to the reserve fund. (Cal. Const., art. IV, § 12, subd. (g).) The balanced budget provision does not prescribe the manner in which the Legislature must calculate this estimate,[7] the nature of the revenue sources the Legislature may or may not take into account, or any role for the Controller in overseeing the estimate. The constitutional text does not in any way expressly support the Controller's assertion that any revenue bills (which cannot be part of the budget bill

---

[7] The Controller eschews any power to second-guess the Legislature's forecast of the amount of revenue that may flow from sources already authorized. "[T]he Controller . . . does not have the authority (or ability) to question the reliability or achievability of any of the [revenue] forecasts."

itself)[8] must be enrolled and sent to the Governor for signature before the constitutional deadline of June 15.  Indeed, the Controller overlooks the extent to which California balances its budget with federal funds, the authorization for which is entirely *outside* the control of the Legislature (and the predicted total of which bespeaks more legislative artistry than accounting skills).

Given this absence of any express language to support the Controller's asserted concern with vouchsafing the absence of any phantom revenues included in a budget bill's estimate, it would amount to "inappropriate judicial interference with the prerogatives of a coordinate branch of government" to endorse his intrusion into the budget process under "the guise of interpretation."  (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1218 (*Schabarum*).)

This does not mean the balanced budget provision is a dead letter.  The Governor can enforce it either through vetoing the budget as a whole or exercising his power to veto line items to bring appropriations in balance with accurate revenues.  (Cal. Const., art. IV, § 10, subds. (a) & (e); see *Schabarum*, *supra*, 60 Cal.App.4th at pp. 1240-1241 (dis. opn. of Morrison, J., [noting Governor's oath to uphold Constitution in review of whether limits on legislative spending in budget honored]).)  Moreover, as with any legislation, the judicial branch is the ultimate arbiter of its constitutionality (although we eschew any attempt at pondering the form of action or the standard of review involved).

Given that constitutionally no role exists for the Controller to play because the revenue estimate in the budget bill is *not* limited to existing law (or enrolled revenue

---

[8] Under the single subject provision, the budget bill is limited to " ' "the one subject of *appropriations* to support the annual budget." ' " (*Association for Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d 384, 394, italics added, citing with approval 64 Ops.Cal.Atty.Gen 910, 917 (1981), in turn citing 29 Ops.Cal.Atty.Gen. 161, 167 (1957) [all of which conclude budget bill cannot make substantive changes in law].)

bills), his assertion—that the electorate necessarily implicated his existing audit function before issuing warrants for legislative salaries in the enforcement of the balanced budget and timely budget constitutional provisions—is beside the point. Additionally, its underlying premise is incorrect.

It is true that the Legislature (to which the Constitution has delegated the task of defining the duties and functions of constitutional officers) has vested the Controller with the responsibility for determining the lawfulness of any disbursement of state money. (*Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317, 1327-1328 (*Tirapelle*); Gov. Code, §§ 12410, 12440.) But this is primarily a ministerial function in which the Controller is not authorized to review and approve or reject an agency's approval of a disbursement if it is within the scope of the legislative grant of discretion to the agency (which we likened to jurisdiction in the "fundamental" sense); the Controller's limited discretionary function involves the determination of whether the factual circumstances of the claim come within the scope of the agency's approval. (*Tirapelle*, at pp. 1329-1330, 1335.) Thus, *Madden v. Riley* (1942) 53 Cal.App.2d 814 noted that the Controller was authorized to exercise discretion to determine whether a claim for approved travel expenses was in fact incurred for the approved purpose, but his legal conclusion that the travel did not constitute "state business" was not within his discretion to determine; we instead upheld the legal basis of the approval and issued a writ against the Controller. (*Madden*, at pp. 819-820, 823-824.) As a result, "Where a department or agency acts within the authority delegated to it by the Legislature, the Controller must defer to the agency or department and leave review of the [lawfulness of the] decision to the courts and/or the Legislature" (*Tirapelle*, *supra*, 20 Cal.App.4th at p. 1335), the latter of which has reserved the authority to review the Controller's rejection of a claim (*id*. at p. 1329, fn. 18). (Accord, *Gilb*, *supra*, 186 Cal.App.4th at p. 463 [if Controller believes agency's action is unlawful, he or she cannot simply disregard it but must seek judicial review].)

10

Consequently, where the *Legislature* is the entity acting indisputably within its fundamental constitutional jurisdiction to enact what it designates as a balanced budget, the Controller does not have audit authority to determine whether the budget bill is in fact balanced.[9]  In addition, it would not make any sense as a matter of statutory interpretation to believe the Legislature granted such statutory review authority in defining the Controller's powers where the Legislature in turn can ultimately override the Controller's decision.  As a result, the Controller is not a party to the enactment of the budget bill.

**DISPOSITION**

The judgment is affirmed.  (***CERTIFIED FOR PUBLICATION.***)


               BUTZ           , J.


We concur:


     BLEASE        , Acting P. J.


     MURRAY       , J.

---

[9]  Indeed, the *judiciary* is not entitled to go behind the face of legislation (except for matters subject to judicial notice) to discern whether the facts supporting an enactment are in fact constitutional.  (*Rankin v. Colgan* (1891) 92 Cal. 605, 606-607; *Stevenson v. Colgan* (1891) 91 Cal. 649, 650, 652; *Schabarum*, *supra*, 60 Cal.App.4th at pp. 1219-1220, 1227; *Frohliger v. Richardson* (1923) 63 Cal.App. 209, 213-214.)