Filed 6/24/14  Los Angeles Police Protective League v. Bd. of Fire and Police Pension Commissioners CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LOS ANGELES POLICE PROTECTIVE LEAGUE et al., | B247539 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC489113) |
| v. | |
| BOARD OF FIRE AND POLICE PENSION COMMISSIONERS FOR THE CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Luis A. Lavin, Judge.  Reversed with directions.

Silver, Hadden, Silver, Wexler & Levine, Stephen H. Silver and Jacob A. Kalinski for Plaintiffs and Appellants.

Reed Smith, Harvey L. Leiderman, Jeffrey R. Rieger and Kerry K. Galusha for Defendant and Respondent Board of Fire and Police Pension Commissioners for the City of Los Angeles.

Meyers, Nave, Riback, Silver & Wilson, Arthur A. Hartinger, Linda M. Ross and Anya J. Freedman for Defendant and Respondent City of Los Angeles.

_____

**INTRODUCTION**

The appeal concerns a dispute between labor organizations representing Los Angeles firefighters and police officers, on the one hand, and the City of Los Angeles (City) and a pension board, on the other. In 2011, the Los Angeles City Council approved an ordinance freezing certain retirement benefits for firefighters and police officers at then current levels. In response, the City and labor organizations entered into letters of agreement (LOAs) that gave active firefighters and police officers the right to voluntarily contribute 2 percent of their base salaries to the Fire and Police Pension Plan (Plan) in exchange for a vested right to the retiree health benefit in effect as of the effective date of the LOAs "and thereafter the maximum amount of each annual increase authorized by the [Los Angeles Administrative Code]."

Shortly after the LOAs were entered into, a dispute about their meaning arose between the labor organizations and the City: The labor organizations asserted that the LOAs required the board administering the pension funds to increase the retirement benefits by the maximum amount permitted each year, while the City asserted that such increases were discretionary. The labor organizations sought declaratory relief, and defendants demurred, contending that the controversy was not ripe because the board administering the pension funds had never voted to exercise its discretion to increase pension benefits by less than the maximum amount permitted. The trial court agreed and sustained the demurrers.

We reverse. Declaratory relief is available to settle controversies between parties regarding the nature of their legal rights and obligations. Here, an actual controversy has arisen between the parties about the scope of the board's discretion under the LOAs, and

2

resolution of the controversy is necessary to allow affected employees to accurately value their benefits and plan for retirement. This therefore is an appropriate case for declaratory relief, and the trial court erred in concluding otherwise.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Complaint

Plaintiffs Los Angeles Police Protective League (League) and United Firefighters of Los Angeles City (Firefighters) (collectively, plaintiffs) filed the present action against the City and the Board of Fire and Police Pension Commissioners of the City of Los Angeles Fire and Police Pensions (Board)[1] (collectively, defendants). The operative first amended complaint (complaint), filed on August 14, 2012, alleges as follows:

To help defray the cost of medical insurance premiums for its retired firefighters and police officers, the City historically has provided a health insurance subsidy (the subsidy) for eligible retired members. The subsidy is administered by the Board pursuant to Section 4.1154(e) of the Los Angeles Administrative Code (Code), which provides that the Board "is authorized to make discretionary changes, on an annual basis beginning in 2006, to the maximum monthly subsidy, so long as no increase exceeds the lesser of a 7% increase or the actuarial assumed rate for medical inflation for pre-65 health benefits established by the Board for the applicable fiscal year."[2]

For each fiscal year between July 1, 2005, and June 30, 2011, the Board increased the monthly subsidy by the maximum permitted under Code section 4.1154(e). On June 14, 2011, however, the Los Angeles City Council approved an ordinance freezing the maximum monthly subsidy for employees who retire on or after July 15, 2011, at the then current level.

---

[1] The Board was erroneously sued as the Board of Fire and Police Pension Commissioners.

[2] For ease of reference, we sometimes refer to the maximum increase permitted under the Code as a "maximum permitted" increase or "7 percent" increase.

Following the passage of the June 14, 2011 ordinance, the City executed identical LOAs with the League and the Firefighters to "resolve [a] dispute and in mutual efforts to provide permanent and stable funding for the retiree health benefit." As relevant here, paragraph 1 of the LOAs provides: "Effective on a date mutually agreed to by the parties, employees represented by the League [and Firefighters] will have the option to voluntarily contribute a maximum of two percent (2%) of their base salary to the [Plan] to defray a portion of the City's cost of providing retiree health benefits. The parties agree that employees who opt to make the two percent (2%) maximum contribution from their base salary shall be entitled to receive upon retirement the retiree health benefit in effect as of the effective date of this LOA and thereafter the maximum amount of each annual increase authorized by the [Code] provided all other conditions of eligibility prescribed in the [Code] are met. The entitlement to retiree health benefits increases shall be a vested right for those employees." (Emphasis omitted.)

The substance of the LOAs was codified by the City in section 4.1167 of the Code, which provides in pertinent part as follows:

"A member who is not represented by an employee union, or who is represented by an employee union which has entered into a written agreement with the City to provide for the election specified herein, may irrevocably elect to make voluntary additional contributions (Additional Contributions) to his or her tier of the Fire and Police Pension Plan by salary deduction at the rate of 2% of his or her regular bi-weekly base salary (as distinguished from pay actually received) in order to support the City's ability to fund retiree health benefits. . . .

"Once a member irrevocably elects to make these Additional Contributions, he or she shall continue to make such Additional Contributions until he or she has done one of the following, whichever is earliest, at which time his or her obligation to make further Additional Contributions shall terminate: (i) made such Additional Contributions for 25 years, or (ii) retired . . . , or (iii) terminated participation in the City's Deferred Retirement Option Plan (DROP) pursuant to Section 4.2105 of the Los Angeles Administrative Code. *In consideration for such Additional Contributions being made for*

4

*the period specified above, each such member and his or her survivors shall have a vested right to receive the retiree health benefits that were provided in this Chapter on July 1, 2011, and to receive the maximum amount of annual increases in subsidies or reimbursements for retiree health benefits in all subsequent years thereafter as authorized in this Chapter on June 30, 2011*, provided that all conditions of eligibility prescribed in this Chapter are satisfied. The freeze established in Section 4.1166(a) of this Chapter shall not apply to these members and their survivors." (Italics added.)

The first cause of action of the complaint alleges that "[a]n actual controversy has arisen and now exists between" the League and the Firefighters, on the one hand, and defendants, on the other hand, concerning the interpretation of the LOAs. Specifically, "[the League and Firefighters] contend that, pursuant to Paragraph 1 of the LOAs . . . the affected employees have a vested right to receive, upon retirement, an annual increase in their subsidy of the lesser of: (1) the percentage increase mandated by the inflation formula or (2) seven percent (7%) (hereinafter referred to as the maximum amount authorized), even though the Board might have the discretion to provide a lesser annual increase to pre July 15, 2011 retirees. On the other hand, Defendants contend that the Board has the discretion to provide annual increases to the affected employees that are less than the maximum amount authorized." Pursuant to Code of Civil Procedure section 1060,[3] the League and Firefighters therefore requested "a judicial determination of this controversy and a declaration that the affected employees have a vested right to receive an annual increase in their subsidy equal to the maximum amount authorized without the Board having any discretion to provide a lesser annual increase." (Emphasis omitted.)

The second and third causes of action allege "[a]s an alternative Cause of Action . . . which only need be pursued in the event this Court should conclude that Paragraph 1 of the LOAs does not mandate an annual increase in the subsidy equal to the maximum amount authorized without the Board having any discretion to provide a lesser increase," that the LOAs be "revised by this Court to reflect the true intent of the parties"

---

**3**     All further statutory references are to the Code of Civil Procedure.

or order the LOAs rescinded and all funds contributed to the Plan on or after July 15, 2011, be returned to the affected employees.

## II.    Demurrers

The Board and City demurred.  The Board asserted that plaintiffs had not pled "an actual, ripe controversy with the Board" because the Board "has not taken any action adverse to Plaintiffs' interests and indeed, to the contrary, has publicly adopted a resolution to increase the subsidy by the exact rate to which Plaintiffs claim they are due."  The Board asserted that "[m]issing from the [complaint], but a matter of indisputable public record, is the fact that earlier this year the Board did in fact increase the retiree medical subsidy by 7%, thereby affording Plaintiffs the very 'benefit of the bargain' . . . which they claim."[4]  Thus, plaintiffs "have placed in controversy the interpretation of the LOAs, but have not and cannot plead a controversy as to the Board above and beyond a hypothetically anticipated scenario that has not occurred:  a *potential future* reduction of the maximum monthly subsidy below 7%."  Further, the Board urged that because plaintiffs' asserted basis for declaratory relief was a dispute concerning the interpretation of the LOAs, plaintiff "cannot avail themselves [of] declaratory relief here because the Board is not a party to the LOAs."  Finally, the Board contended that plaintiffs would not suffer any hardship if the court declined to grant declaratory relief and, in any event, "[p]laintiffs are not without any recourse, as their claims against the City will adjudicate the proper interpretation of the LOAs and determine [p]laintiffs' rights under the agreements."

The City contended that plaintiffs' declaratory relief claim "rests on an assumption that at some point in the future the City will not raise the amount of the subsidy by seven percent.  But that assumption is nothing more than speculation.  Plaintiffs have not

---

[4]    In support, the Board sought judicial notice of the Board's Resolution 12109, adopted on May 3, 2012.  The resolution increased the maximum non-Medicare health subsidy for retirees by 7 percent, to $1,174.23, effective July 1, 2012.  Three of the nine commissioners voted against the increase.

6

pointed to, nor can they point to, any evidence that indicates that the City will not increase the amount of the subsidy by seven percent in years to come." Thus, the City asserted that the declaratory relief claim was not ripe for adjudication because "[n]either the City nor the Board has taken any action that is contrary to what plaintiffs are seeking through this lawsuit. Rather, plaintiffs' case is based on an expectation that the City or Board will one day take a contrary action. But such an expectation without any foundation is not sufficient to maintain a declaratory relief claim and withstand demurrer." The City made similar claims with regard to the second and third causes of action, contending that they also were "unripe, as they ask for the same level of speculation by the Court."

Plaintiffs opposed the demurrers. They urged that both the Board and the City had taken the position that the Board has discretion to provide annual increases to the subsidies that are less than the maximum amount authorized. Further, the issues "have 'sufficiently congealed' because there is no further factual development necessary to determine whether the Affected Employees were granted a vested right to receive an annual increase in the Subsidy under the Plan that is equal to the 'maximum amount authorized.'" Finally, plaintiffs urged they were suffering hardship because they *currently* were making contributions of 2 percent of their salary without any assurance that they would receive enhanced retirement benefits in the future. Thus, a judicial determination of this issue was necessary so employees could "(a) confirm what they believe they bargained for when they exercised their option pursuant to the respective LOAs and [Code] Section 4.1167 to contribute 2% of their salaries for the bulk of the remainder of their careers, and, if necessary, (b) take appropriate legal action to remedy a contrary interpretation."

In support of their opposition, plaintiffs submitted some of the City's interrogatory responses, in which the City contended that "under the terms of the LOA, the BOARD has discretion on whether to increase the annual subsidy by the maximum amount authorized by the [Code] for individuals who opted to make a future two-percent contribution of their base salary to the PLAN pursuant to the LOA." Plaintiffs also noted

7

that although the Board's 2012 resolution (Resolution 12109) approved a 7 percent increase in the health insurance subsidy for fiscal year 2012-2013, three of the nine commissioners voted *against* the resolution.

### III.    Order Sustaining Demurrers

At the January 22, 2013 hearing on the demurrers, the City's counsel acknowledged that the City "has always maintained that it [has] had discretion to increase the subsidy less than 7 percent. That hasn't changed." However, counsel urged that the scope of the Board's discretion was not ripe for decision because "despite the fact that it has always maintained that it had that discretion, it nonetheless increased the subsidy 7 percent every year as it has done for this year." Plaintiffs' counsel disagreed, urging that declaratory relief was "absolutely necessary to serve as a guide for plaintiff[s'] future conduct in order to preserve their legal rights."

The trial court sustained the demurrers without leave to amend. Its written order said: "Plaintiffs maintain that Defendants contend that Defendant Board has the discretion to provide annual increases to the affected employees that are less than the maximum amount authorized. [Citation.] However, it is undisputed that Defendants have not issued an annual increase in the subsidy in an amount less than the maximum amount authorized. Instead, the allegations of the [complaint] reveal the controversy to really be one that is anticipated to occur in the future and hypothetical—that Defendants may at some point in the undetermined future exercise their discretion to provide a lesser annual increase.

"Although an actual controversy encompasses a probable future controversy relating to the legal rights and duties of the parties, Plaintiffs fail to allege even a probable future controversy. For example, Plaintiffs do not allege that Defendants will probably issue an annual increase in the subsidy in an amount less than the maximum

amount authorized at any point in time.[5]  Indeed, the opposite appears to be true and a probable future controversy does not appear to be on the horizon:  Defendant Board has, by Resolution 12109 adopted on May 3, 2012, increased the maximum retired sworn non-Medicare health subsidy by 7% effective July 1, 2012 for the 2012-2013 fiscal year.  [Citation.]”

Based on the foregoing, the court found that plaintiffs had failed to state a claim for declaratory relief, reformation, or rescission because they “have failed to allege an actual controversy that is sufficiently ripe for adjudication.”  A judgment of dismissal was entered February 11, 2013, and plaintiffs timely appealed.

## STANDARD OF REVIEW

“‘When a demurrer is sustained, we must determine de novo whether the [pleading] alleges facts sufficient to state a cause of action under any legal theory.’  (*Arce v. Kaiser Foundation Health Plan, Inc*. (2010) 181 Cal.App.4th 471, 482.)  ‘[W]e “treat[] the demurrer as admitting all material facts properly pleaded,” but we do not “assume the

---

[5]      At the hearing, after reviewing the court’s tentative ruling that plaintiffs had not pled a probable future controversy, plaintiffs requested leave to amend the complaint to allege a probable future controversy.  The court responded that any such allegation would be insufficient unless asserted with great specificity:  “In light of the request for judicial notice [of the Board vote on Resolution 12109 approving the subsidy for the 2012-2013 fiscal year], I think basically that trumps an allegation in your pleading.  You’re going to have to be very specific as to that you’ve been given notice, for example, that they will do X or Y.  My view is that simply that they have discretion whether or not to do that or not is really — it doesn’t establish a controversy for the court to litigate.  If you want to allege something more specific, if there’s correspondence, if there’s some other action that has been communicated that is much more concrete, then certainly I’d be willing to give you an opportunity to tell me what those facts are.  But as alleged with the request for judicial notice that I’ve taken judicial notice of that trumps essentially the allegations in your pleading, you fail to state a claim.  [¶] . . . [¶] . . . My view is a hypothetical potential dispute is an insufficient basis for the court to assert jurisdiction.  I don’t think the case is ripe.  So I don’t think you’re going to be able to change my tentative on that view, and if you’re unhappy with the court’s ruling, you should really get clarification from the Court of Appeal.”

truth of contentions, deductions or conclusions of law." [Citation.]' (*Id*. at p. 481.)"
(*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199,
204.)

Defendants contend that our review of the trial court's sustaining of a demurrer in
this declaratory relief action is for abuse of discretion. We do not agree. "Declaratory
relief is available 'in cases of actual controversy relating to the legal rights and duties of
the respective parties.' (Code Civ. Proc., § 1060.) "'Whether a claim presents an 'actual
controversy' within the meaning of Code of Civil Procedure section 1060 *is a question of
law that we review de novo*." [Citation.]'" (*Coronado Cays Homeowners Assn. v. City of
Coronado* (2011) 193 Cal.App.4th 602, 607, italics added (*Coronado Cays*); see also
*Steinberg v. Chiang* (2014) 223 Cal.App.4th 338, 343; *Environmental Defense Project of
Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885.) "'Where, therefore,
a case is properly before the trial court, under a complaint which is legally sufficient and
sets forth facts and circumstances showing that a declaratory adjudication is entirely
appropriate, the trial court may not properly refuse to assume jurisdiction; . . . if it does
enter a dismissal, it will be directed by an appellate tribunal to entertain the action.'"
(*Californians for Native Salmon etc. Assn. v. Department of Forestry* (1990) 221
Cal.App.3d 1419, 1426-1427.)[6]


## DISCUSSION


Plaintiffs contend that the trial court erred in sustaining the demurrers because an
actual controversy has arisen concerning the parties' obligations under the LOAs, and

---

[6]     When an actual controversy exists and jurisdiction is proper, section 1061 gives
the trial court discretion to determine whether to exercise the power to provide
declaratory relief, a decision we review for abuse of discretion. (*Coronado Cays*, *supra*,
193 Cal.App.4th at p. 607.) That issue is not now before us because a demurrer addresses
only the legal sufficiency of a complaint, *not* the advisability of granting any particular
relief. In other words, although a grant or denial of declaratory relief may be reviewed
for abuse of discretion, the sustaining of a demurrer for failure to state a claim for
declaratory relief is reviewed de novo.

10

affected employees will suffer hardship if the issue is not decided now because they will have to continue to make annual contributions to the fund without certainty about the retirement benefits they will receive in exchange. Defendants disagree, asserting that (1) there is no present, concrete dispute because the Board has always exercised its discretion to grant the benefits to which plaintiffs claim to be entitled, (2) plaintiffs have not, and cannot, allege that a concrete future controversy is likely; and (3) denying declaratory relief causes plaintiffs no hardship.

For the reasons that follow, plaintiffs' declaratory relief action is ripe for adjudication. We therefore reverse the order sustaining the demurrer and judgment of dismissal.

## I.   Principles of Declaratory Relief

Declaratory relief is available under section 1060, which states: "Any person interested under a written instrument . . . , or under a contract, or who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

"Declaratory relief operates prospectively, serving to set controversies at rest before obligations are repudiated, rights are invaded or wrongs are committed. Thus the remedy is to be used to advance preventive justice, to declare rather than execute rights. (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 360.) Declaratory relief serves a practical purpose in stabilizing an uncertain or disputed legal relation,

11

thereby defusing doubts which might otherwise lead to subsequent litigation.  (*Ibid*.)"
(*Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau* (2011) 193
Cal.App.4th 49, 59.)

The general purposes of declaratory relief inform the interpretation of sections
1060 and 1061.  "'"'The purpose of a declaratory judgment is to "serve some practical
end in quieting or stabilizing an uncertain or disputed jural relation."'  [Citation.]
'Another purpose is to liquidate doubts with respect to uncertainties or controversies
which might otherwise result in subsequent litigation [citation].'  [Citation.]"  [Citation.]
"'One test of the right to institute proceedings for declaratory judgment is the necessity of
present adjudication as a guide for plaintiff's future conduct in order to preserve his legal
rights.'"'  (*Meyer* [*v. Sprint Spectrum L.P*. (2009)] 45 Cal.4th [634,] 647.)  '[S]ection
1060 does not require a breach of contract in order to obtain declaratory relief, only an
"actual controversy."  Declaratory relief pursuant to this section has frequently been used
as a means of settling controversies between parties to a contract regarding the nature of
their contractual rights and obligations.'  (*Ibid*.)"  (*Osseous Technologies of America, Inc.
v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 364-365.)

A prerequisite to the issuance of a declaratory judgment is the existence of a "ripe"
controversy.  A controversy is ripe if it is "'definite and concrete, touching the legal
relations of parties having adverse legal interests.  [Citation.]  It must be a real and
substantial controversy admitting of specific relief through a decree of a conclusive
character, as distinguished from an opinion advising what the law would be upon a
hypothetical state of facts.'"  (*Pacific Legal Foundation v. California Coastal Com.*
(1982) 33 Cal.3d 158, 170-171.)  A declaratory judgment must "'decree, not suggest,
what the parties may or may not do.'"  (*Ibid*.)  "'A controversy is "ripe" when it has
reached, but has not passed, the point that the facts have sufficiently congealed to permit
an intelligent and useful decision to be made.'"  (*Ibid.*)  However, section 1060 "does not
require a breach of contract in order to obtain declaratory relief, only an 'actual
controversy.'  Declaratory relief pursuant to this section has frequently been used as a
means of settling controversies between parties to a contract regarding the nature of their

12

contractual rights and obligations.  [Citations.]"  (*Meyer v. Sprint Spectrum L.P.*, *supra*, 45 Cal.4th at p. 647.)  Any doubt should be resolved in favor of granting declaratory relief.  (*Warren v. Kaiser Foundation Health Plan, Inc.* (1975) 47 Cal.App.3d 678, 683, citing 3 Witkin, Cal. Procedure (2d ed.) Pleading, § 721.)

## II.     The Dispute Is Sufficiently Concrete to Warrant Declaratory Relief

Defendants contend, and the trial court agreed, that any present dispute between the parties about plaintiffs' rights under the LOAs and the Code is too abstract to warrant declaratory relief.  Defendants note that the Board voted to increase the subsidy by 7 percent in each of the two fiscal years since the LOAs were executed; thus, they say, the parties' "'difference of opinion' as to whether the Board has discretion under the Letters of Agreement does not constitute an actual controversy ripe for declaratory relief. [Citations.]"  Stated simply, defendants' contention is that its assertion of discretion with regard to future increases in the subsidy cannot give rise to a ripe dispute because the Board *may* exercise that discretion in the very manner plaintiffs advocate.  They thus urge that plaintiffs cannot plausibly allege that "a concrete controversy is likely to materialize in the near future."  For the reasons that follow, defendants err.

### A.     Relevant Case Law

Appellate opinions hold that declaratory relief is appropriate to resolve a dispute about the scope of a party's discretion—even *before* the discretion is exercised.  One such opinion is *Steinberg v. Chiang*, *supra*, 223 Cal.App.4th 338 (*Steinberg*), a dispute over the state Controller's right to withhold the salaries of state legislators who fail to timely pass a balanced budget.  In *Steinberg*, the Legislature passed a budget bill on June 15, 2011; the Governor immediately vetoed it and the Controller determined it was not balanced.  As a result, pursuant to a state constitutional amendment, the Controller declared the members of the Legislature would forfeit their salaries from June 15 until a balanced budget bill was passed.  (*Id.* at pp. 341-342.)  The stalemate ended when the

Legislature passed a balanced budget on June 28, which the Governor signed into law on June 30, 2011. (*Id.* at p. 342.)

The Legislature did not seek direct judicial review of the Controller's action, but instead, in January 2012, filed an action seeking a declaration that the Legislature complies with the balanced budget provision of the state Constitution when it passes a budget bill in which appropriations do not exceed the legislative estimate of revenues, and that the Controller thereafter has no discretion to declare legislative salaries forfeited. (*Steinberg*, *supra*, 223 Cal.App.4th at pp. 342-343.) The parties made cross-motions for judgment on the pleadings, and the trial court issued the requested declaratory judgment. (*Id.* at p. 343.)

The Controller appealed, contending that the declaratory judgment was purely advisory because there was no existing dispute between the parties. The Court of Appeal disagreed and affirmed. It explained that although a balanced budget had been adopted for the current fiscal year, the parties were in an ongoing relationship "in which this existing dispute over the Controller's asserted authority can arise again in the future." (*Steinberg*, *supra*, 223 Cal.App.4th at p. 341.) Further, in light of the Legislature's repeated failures to enact timely budget bills and the Controller's continuing claim of authority to withhold salaries, the dispute was reasonably likely to recur. (*Id.* at pp. 343-345.)

The court noted, moreover, that refusing to grant declaratory relief would work a significant hardship on legislators. It explained: "The Legislature should not be put in the position of risking the forfeiture of future salary if its position is not sustained in a future confrontation with the Controller, grounded on the Controller's interpretation of the constitutional provisions at issue here. Declaratory relief is cumulative of any other remedy. (Code Civ. Proc., § 1062.) Availability of an alternative remedy, such as mandate in a future impasse [citations], is not generally a basis for denial of declaratory relief [citations]. A mandate proceeding is not necessarily expeditious. Each day consumed in the course of a mandate proceeding against the Controller would represent the risk of another day of forfeited wages if the Legislature ultimately did not prevail."

14

(*Steinberg*, *supra*, 223 Cal.App.4th at pp. 344-245.)  Under these circumstances, the court thus found that the action presented an actual controversy and that declaratory relief was necessary and proper.  (*Ibid*.)

The court reached a similar conclusion in *Tehachapi-Cummings County Water Dist. v. Armstrong* (1975) 49 Cal.App.3d 992 (*Tehachapi*), a water rights dispute.  In that case, the water district sued the State of California, seeking a declaration limiting the state's pumping of water from the Cummings Basin to "safe yields"—i.e., the maximum quantity of ground water that could be extracted annually without eventually depleting the basin.  (*Id.* at pp. 995-996.)  The parties agreed there had been an "overdraft" of the basin during each year from 1949 to 1965, but that water extractions for the year immediately preceding the filing of the complaint did not exceed safe yields.  (*Ibid*.)  Following a trial, the court entered a judgment declaring the water rights of the parties.  (*Id.* at p. 998.)

The state appealed, contending that because the Cummings Basin was not in a condition of annual overdraft in either the year preceding the filing of the action or in any of the four years before trial, the court lacked power pursuant to section 1060 to adjudicate the parties' water rights.  (*Tehachapi*, *supra*, 49 Cal.App.3d at p. 998.)  The Court of Appeal disagreed.  It explained that water users were entitled to a judgment declaring their water rights even in the absence of "substantial present damage," and thus that an "annual overdraft" was not a necessary prerequisite to an "actual controversy."  (*Id.* at pp. 998-999.)  Further, because there had been annual overdrafts between 1950 and 1965, and a slight increase in water use would cause a resumption of the annual overdraft, "the present and prospective injury to the overlying owners was of sufficient magnitude to justify the exercise of the court's jurisdiction."  (*Id.* at p. 999.)

### B.  The Present Dispute Is Ripe

*Steinberg* and *Tehachapi* compel the conclusion that the present controversy is ripe because there is an actual dispute between the parties, it is reasonably likely that the

15

Board will increase annual subsidies by less than 7 percent in the future, and plaintiffs will suffer hardship if the dispute is not adjudicated now:

(1)     *There is an actual dispute between the parties.*  As in *Steinberg* and *Tehachapi*, there is in the present case an ongoing relationship between the parties. Defendants administer the retirement benefits of plaintiffs' members.  Defendants' administrative responsibilities include, among other things, determining on an annual basis whether to increase the retirement health insurance subsidies for plaintiffs' members.  Further, there is a dispute between the parties concerning the Board's obligations under the LOAs and the Code:  Plaintiffs contend that the Board is legally bound to increase the subsidies by 7 percent each year, while defendants contend that *whether* to increase the subsidies, and by *how much*, is within the Board's discretion.[7] An "actual controversy" therefore exists within the meaning of the declaratory relief statute.

(2)     *A future increase of less than 7 percent is reasonably likely.*  Defendants contend that although the parties disagree about the scope of their discretion under the LOAs and the Code, the disagreement is not ripe for adjudication because plaintiffs cannot demonstrate that defendants will ever exercise their discretion contrary to plaintiffs' interests.  We do not agree.  *Steinberg* and *Tehachapi* stand for the proposition that if there is a disagreement about the way in which a defendant may or must exercise its discretion, a plaintiff need not wait for an exercise of discretion contrary to its interests before obtaining declaratory relief.  Rather, the dispute is ripe—and hence a declaratory judgment is available—if  the defendant's exercise of discretion in a manner harmful to the plaintiff is *reasonably likely*.  Further, the cases dictate that a plaintiff demonstrates

---

[7]     At oral argument, the Board asserted that it has never taken a position as to whether it has discretion to increase the subsidies by less than 7 percent per year.  While the Board may not have formally articulated a position on this issue, we believe the facts that its members vote each year on whether to increase the subsidy, and each year some members have voted *against* a 7 percent increase, is evidence that at least some members of the Board believe they have discretion to increase the subsidy by less than 7 percent or not at all.

that a future exercise of discretion is "reasonably likely" if (a) defendant exercised its discretion in that manner in the past, and (b) the circumstances that precipitated the past exercise of discretion are reasonably likely to recur in the future.

In the present case, we believe plaintiffs have established a reasonable likelihood of future harm. The appellate record demonstrates that although the Board increased the subsidy by 7 percent in each of the seven years between July 1, 2005, and June 30, 2011, subsidies were then frozen at then current levels effective July 2011, presumably in response to budgetary or funding pressures. Subsidy increases have been reinstated for some employees, but a dispute over subsidy increases is reasonably likely to recur in light of (a) the Board's position that any future increases are within its discretion, and (b) the near certainty of future budgetary or funding constraints. Indeed, in view of the fact that several Board members have voted *against* the increases in each of the last two years, it seems only a matter of time before this dispute again reaches a critical stage.

(3) *Plaintiffs will suffer hardship if the dispute is not adjudicated now.* Finally, as in *Steinberg* and *Tehachapi*, the refusal to grant declaratory relief will work a serious hardship on the plaintiffs' members. Plaintiffs' participating members are currently making annual salary contributions and have agreed to do so each year until they retire. Plaintiffs assert that when their members decided to make voluntary 2 percent contributions to the Plan, they "believed they were eliminating the uncertainty that was present before the freeze by entering into the LOAs and contributing 2% of their salary so that they would be guaranteed annual increases equal to the Maximum Amount Authorized." However, under defendants' interpretation of the LOAs, the participating members are not guaranteed the consideration they believe they bargained for in exchange for their 2 percent contributions. To paraphrase *Steinberg,* plaintiffs "should not be put in the position of risking the forfeiture of future [retirement benefits] if [their] position is not sustained in a future confrontation with [defendants], grounded on the [defendants'] interpretation of the [contractual and statutory] provisions at issue here." (*Steinberg*, *supra*, 223 Cal.App.4th at p. 344.) Moreover, plaintiffs contend that their participating members cannot effectively plan for retirement until a determination is

17

made regarding the scope of the Board's discretion in approving subsidy increases. That is, until members know what the size of their subsidy will be, they will not know what other retirement investments are necessary. In addition, resolving a dispute over the meaning of the LOAs and the intent of the parties who negotiated them may be more difficult as time passes and memories fade. Thus, withholding a determination about the scope of the Board's discretion will result in hardship to the plaintiffs.

## III.    The Board's Additional Contentions Are Without Merit

In addition to contending that plaintiffs' claims are not ripe, the Board also urges that it is not a proper party to this suit because it was not a signatory to the LOAs and has never contended that it has discretion to increase the subsidy by less than 7 percent annually. For the reasons that follow, the Board's contentions fail.

First, the Board posits that a claim cannot be ripe in the absence of some affirmative action by a defendant; thus, it urges, because the Board has not taken any steps to increase the maximum monthly medical subsidy by less than 7 percent, the present action cannot be ripe *as to it*. The premise of the Board's claim is flawed: Declaratory relief "operates *prospectively* to declare future rights, rather than to redress past wrongs." (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497, italics added.) Stated differently, declaratory relief "serves to set controversies at rest *before* they lead to repudiation of obligations, invasion of rights or commission of wrongs. In short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them. (*Ibid.*)" (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 909, italics added.) Thus, a plaintiff seeking declaratory relief need not show past harm; it "'must instead show a very significant possibility of future harm.'" (*Coral Construction Inc. v. City and County of San Francisco* (2004) 116 Cal.App.4th 6, 17.) Plaintiffs have sufficiently alleged a significant possibility of future harm: They have alleged a dispute between the parties as to the scope of the Board's discretion, and they have demonstrated that in each of the two years since the LOAs were signed, some Board members have voted against 7 percent

18

increases to the subsidy.  Thus, although the Board as a whole has not yet voted against a 7 percent increase, plaintiffs have demonstrated an existing dispute about its right to do so.

Second, the Board argues that declaratory relief is not available against it because it is not a party to the LOAs.  We do not agree.  "Section 1060 does not require the existence of a legal instrument between parties as a predicate for declaratory relief." (*Siciliano v. Fireman's Fund Ins. Co*. (1976) 62 Cal.App.3d 745, 753.)  Rather, "[t]he law allows any party with an interest in a contract to pursue a declaration of rights as to that instrument when an actual controversy exists."  (*Market Lofts Community Assn. v. 9th Street Market Lofts, LLC* (2014) 222 Cal.App.4th 924, 932.)  Thus, a party may be named in a declaratory relief action if that party's presence is necessary to a declaration of rights under a contract, even if that party is not a signatory to the contract.  (E.g., *Market Lofts*, *supra*, at pp. 931-932 [homeowners association was a proper party to a declaratory relief action seeking declaration of rights under license agreement between two developers because it was a directly named beneficiary under that agreement]; *Empire Redwood Co. v. Hall* (1958) 161 Cal.App.2d 823, 829 [signatory's lessee was a proper party to declaratory relief action seeking interpretation of a contract; lessee "would be affected by the determination of the issues involved in the . . . controversy and was a proper party to the action"].)

In the present case, the Board is a proper party to the litigation because the City has delegated to the Board the responsibility to carry out the City's duties under the LOAs.  Thus, although the *City* made the promises reflected in the LOAs, it carries out those promises through the *Board*.  A declaration of the plaintiffs' rights under the LOAs therefore requires that the Board be a party to the action—indeed, it is doubtful whether plaintiffs could get the relief they seek without joining the Board as a defendant.

Finally, the Board urges that declaratory relief is improper because "[i]n truth and in fact" it has never contended it has discretion to provide annual increases to the subsidy that "are less than the maximum amount authorized."  As we have said, we believe the Board has so contended by its actions.  (See fn. 7, *ante*.)  In any event, plaintiffs *allege*

such a contention, and at the present stage that is enough.  To quote the court in *Californians for Native Salmon etc. Assn. v. Department of Forestry*, *supra*, 221 Cal.App.3d 1419, 1428:  "In the realm of truth and fact the assertion may indeed be erroneous, but for present purposes the demurrer admits the allegation that those policies exist."

## DISPOSITION

The order sustaining defendants' demurrers and entering a judgment of dismissal against plaintiffs is reversed.  The trial court is directed to enter a new and different order overruling the demurrers and reinstating the action.  Plaintiffs are awarded their appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, J.[*]

We concur:

WILLHITE, Acting P. J.

MANELLA, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.