Filed 5/27/25 Trellis Research v. Thaler CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TRELLIS RESEARCH, INC., et al.,<br><br>    Plaintiffs, Cross-defendants and Appellants,<br><br>    v.<br><br>ANDREW THALER,<br><br>    Defendant, Cross-complainant and Appellant. | B330990<br><br>(Los Angeles County Super. Ct. No. 19STCV06669) |

APPEALS from a judgment and postjudgment orders of the Superior Court of Los Angeles County. Michael P. Linfield, Judge. Affirmed in part, reversed in part, and vacated in part.

Cohen Williams, Alyssa D. Bell and Martin J. Cristopher Santos for Plaintiffs, Cross-defendants and Appellants.

Law Offices of Robert G. Loewy, Robert G. Loewy; Law Office of Stephen Demik and Stephen D. Demik for Defendant, Cross-complainant and Appellant.

_____

This litigation proves the adage, "Never go into business with friends."  When Nicole Clark (Clark) and Andrew Thaler (Thaler) stopped dating, they decided to form Trellis Research, Inc. (Trellis or Company).  They became equal shareholders and directors.  Soon, they began to disagree over developing the Company.  Their relationship turned contentious.  Thaler began engaging in actions that Clark considered harmful to Trellis.  Clark ousted Thaler and had the Company repurchase his outstanding shares.  Settlement negotiations over Thaler's post-termination compensation proved fruitless.  Clark filed suit against Thaler on behalf of Trellis.  Thaler responded with a cross-complaint against Trellis and Clark.

A jury heard four of the parties' claims and rendered verdicts that were purportedly advisory only.  Trellis was awarded compensatory and punitive damages against Thaler for intentional interference with contractual relations.  Thaler was awarded compensatory damages against Trellis for unpaid wages claims and against Clark for breach of fiduciary duty.  Thaler waived his right to recover compensatory damages against Clark in favor of anticipated declaratory relief.  At the declaratory relief hearing, the trial court adopted the jury's findings and awarded Thaler shares in Trellis as "equitable declaratory relief."  Several posttrial motions were heard and denied.  Trellis and Thaler appealed on numerous grounds.

We deem forfeited Thaler's challenge to the denial of his new trial motion on his breach of fiduciary duty claim.  We vacate the equitable declaratory relief award to Thaler.  We reverse the denial of Clark's motion for judgment notwithstanding the verdict on Thaler's claim of breach of fiduciary duty.  We affirm the trial court's denial of Thaler's request to remand for an award

2

of additional attorney fees.  We affirm the denial of Thaler's motion for judgment notwithstanding the verdict on Trellis' claim for intentional interference with contractual relations, including the compensatory damages award.  We vacate the punitive damages award against Thaler on that claim.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Facts

#### A.    Formation of Trellis

Clark worked as an attorney, and Thaler worked as a software engineer.  After dating periodically, they decided to go into business together instead.  In February 2018, they formed Trellis as a Delaware corporation.  Trellis is a Web site offering a database of trial courts' tentative rulings for attorneys and law firms.  Clark and Thaler agreed to run the Company as equal shareholders and co-directors.  For marketing purposes, Clark was named CEO and Thaler was named CTO.

#### B.    Bylaws and Restricted Stock Purchase Agreement

In addition to the Company bylaws, Clark and Thaler executed a Restricted Stock Purchase Agreement (RSPA).  Under the RSPA, they were each allocated 4 million shares of Trellis common stock at $0.00001 per share for an aggregate purchase price of $40.00.  The RSPA provided that Clark and Thaler would receive their respective Trellis shares based on their continued employment:  (1) The shares would vest monthly over four years, but none would vest if the employees were terminated or left Trellis within the first year of employment ("one-year cliff"), and (2) If an employee separated from Trellis prior to the one-year cliff, Trellis had the exclusive right to repurchase the unvested stock for the same price the employee paid (a total of $40.00).

3

Unless the Company exercised its option sooner, the repurchase would occur automatically 60 days post-separation.

To protect Clark and Thaler from termination following an acquisition, the RSPA contained a "double trigger" provision under which all 4 million shares would vest if (1) the employee's termination was without cause, and (2) in connection with, or within 12 months of a change in Trellis's control. "Change of control" was defined as "the consummation of a transaction . . . in which any 'person' . . . becomes the 'beneficial owner' . . . of all of the Company's then outstanding voting securities."

Pertinent here, the conditions for termination for cause under the RSPA were (Clause I) the employee's "willful and continued failure to substantially perform [the employee's] duties to the Company" after receiving the Trellis board of directors' written demand for substantial performance and an opportunity to cure; or (Clause II) the employee's commission of "willful fraud, willful misconduct, dishonesty or other intentional action in any such case which is materially injurious to the Company."

Simply put, if either Clark or Thaler were terminated from Trellis employment for cause before the one-year cliff, and no accelerated vesting occurred under the change of control provision (because the remaining employee, Clark or Thaler, did not own 100 percent of Trellis stock on the termination date), the terminated employee's shares did not vest, meaning that individual was no longer a Trellis shareholder.

## C. Involvement of Alex Eremia and Others in Developing Trellis

By April 2018, Clark and Thaler had quit their full-time jobs to work on growing Trellis as a startup. They reached out to

4

potential investors. Thaler raised $155,000 for Trellis from Ben Weinstein, Paulwei Wang, and Kevin Samy as SAFE investors.[1]

In May 2018, Alex Eremia (Eremia), a data scientist, joined Trellis as a third cofounder.[2] Eremia signed the RSPA, which allotted her 1.7 million shares of Trellis. That left Clark and Thaler with an equal ownership interest of less than 50 percent of the outstanding issued shares.

In July 2018, Trellis was accepted in Techstars Los Angeles (Techstars) accelerator program. It is a mentorship for startups that culminates in "Demo Day" where the entrepreneurs can pitch their businesses to potential investors. Techstars was Trellis's first institutional investor. In exchange for 6.2 percent of the Company's outstanding shares, Techstars provided mentorship and a $20,000 investment.

**D**. **Thaler's Misconduct, Termination, and the Company's Repurchase of His Shares**

Clark, Thaler, and Eremia rented a house together. During this time, Clark's and Thaler's relationship deteriorated.

Securing investors was critical to Trellis's development. Demo Day was October 10, 2018. However, Clark feared Thaler's behavior from April to September 2018 was undermining the Company's success. First, Thaler's persistent poor attitude and ineptitude dissuaded potential investors. Second, the user

---

[1] A SAFE, or Simple Agreement for Future Equity, is a financial instrument used by startups to raise capital from investors. It allows investors to invest now in exchange for a promise of equity in the future, typically during a future funding or "seed" round.

[2] Eremia is not a party to this lawsuit and did not testify at trial.

interface (U/I) Thaler created for Trellis was substandard.[3] Thaler resisted Clark's requests to improve the U/I. He also publicly criticized Clark, verbally abused her, and published inaccurate Company analytics on Trellis's Web site.

On October 1, 2018, Clark and Eremia voted Thaler off the board of directors and terminated his employment. The next day, Clark caused Trellis to exercise its option in the RSPA to repurchase Thaler's shares for $40.00. After Eremia maligned Clark to Techstars, Clark fired her on October 2, 2018. Trellis repurchased Eremia's shares for $17.00. Clark took control of Trellis as its sole director, CEO, and majority shareholder.

Thaler convinced the three SAFE investors they should seek the immediate return of their investments. The day before Techstars's Demo Day, the investors informed Clark of their decision to divest. Clark was compelled to secure the funds quickly and in a way that burdened the Company.

Over the next few weeks, Clark and Thaler discussed various settlement options with no agreement. This litigation ensued.

---

[3] "The user interface (UI) is the point of human-computer interaction and communication in a device. This can include display screens, keyboards, a mouse and the appearance of a desktop. It is also how a user interacts with an application or a website, using visual and audio elements, such as type fonts, icons, buttons, animations, and sounds. [¶] A good UI adheres to design principles that enable users to navigate through the interface and easily use it for their intended purposes." (<https://www.techtarget.com/searchapparchitecture/definition/user-interface-UI> [as of May 9, 2025] archived at <https://perma.cc/EHH2-3XVR>.)

## II.  Proceedings

### A.  Lawsuit

Trellis filed suit against Thaler alleging five causes of action.  At trial, Trellis limited its claims to intentional interference of contractual relations, commercial disparagement, and declaratory relief.

Thaler's cross-complaint against Trellis and Clark alleged 13 causes of action.  At trial, Thaler pursued only his claims for failure to pay minimum and overtime wages and declaratory relief against Trellis and breach of fiduciary duty against Clark.

### B.  Jury Trial

A jury trial with an advisory jury was held from January 17 to January 25, 2023.  The trial was bifurcated into liability and damages phases.

Following deliberations on the liability phase, the jury rendered a general verdict on each cause of action with findings in response to special interrogatories.[4]  The jury found for Trellis on its cause of action for intentional interference with contractual relations with a finding Thaler acted with malice, oppression, or fraud.  The jury found for Thaler on Trellis's cause of action for commercial disparagement.  The jury found for Thaler on his breach of fiduciary duty cause of action against Clark.  The jury

---

[4] Contrary to Thaler's characterization, the jury returned a series of general verdicts with special findings, not a special verdict.  When a general verdict is used, a trial court has the discretionary authority to direct the jury to make findings upon particular written questions of fact.  (Code Civ. Proc., § 625.)  This combination or hybrid is referred to as "a general verdict with special findings."  (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 358.)

7

did not find Clark acted with malice, oppression, or fraud. The jury found for Thaler on his unpaid wages causes of action. The jury found Clark did not possess 100 percent of the outstanding shares of Trellis stock on or about October 2, 2018. The jury found Thaler was terminated for cause as defined under Clause I or Clause II of the RSPA.

Following deliberations on the damages phase, the jury awarded Trellis $305,000 in compensatory damages and $610,000 in punitive damages against Thaler for intentional interference with contractual relations. The jury awarded Thaler $600,000 in compensatory damages against Clark for breach of fiduciary duty. The jury awarded Thaler $22,265 in compensatory damages against Trellis for unpaid wages causes of action.

**C.     Statement of Decision—Declaratory Relief Action**

For the remaining declaratory relief action, the trial court was to render a statement of decision on the parties' rights under the RSPA. In requesting a hearing, Thaler told the court he was "seeking declaratory relief as the primary remedy for his breach of fiduciary duty claim" and the court should find Clark engaged in an unjust corporate coup d'etat, rendering the October 2, 2018 stock repurchase a "void act" and "of no legal effect." Thaler also waived his right to recover the jury's $600,000 compensatory damages award, electing instead to pursue equitable relief from the court in the form of 1.5 million shares of Trellis stock.

Following the hearing, the trial court issued its statement of decision, adopting the advisory jury's verdicts and findings that Thaler was terminated for cause and Clark did not own 100 percent of Trellis stock at the time of Thaler's termination because Techstars owned 6 percent. Thus, the court determined

8

the conditions precedent for the application of the double trigger provision were not met and Thaler was not "legally entitled to Trellis stock" under the RSPA. Nonetheless, the court held Thaler was "equitably entitled" to 534,000 shares of Company stock because he deserved compensation for his CTO work.[5]

### D. Postjudgment Motions and Appeals

Thereafter, Clark and Thaler each moved for judgment notwithstanding the verdict, which the trial court denied. Thaler also moved to vacate the judgment and for a new trial. The trial court partially granted Thaler's attorney fees motion, while denying Trellis's costs.[6] The trial court entered an amended judgment on July 17, 2023. Thaler and Trellis timely appealed, primarily contesting the rulings on the posttrial motions.[7]

## DISCUSSION

This case presents a bitter dispute that was improperly tried by the parties and the trial court. Simply put, the case is a procedural mess, compounded by significant gaps in the record.

---

[5] The trial court observed Clark made Thaler a prelitigation settlement offer of 534,000 shares of Company stock.

[6] The trial court partially granted Thaler's motion to vacate by increasing his award of Company shares from 534,000 to 583,333 to correct a mathematical error.

[7] Thaler prevailed on his breach of fiduciary duty and declaratory relief claims. He would thus ordinarily be barred from challenging those portions of the judgment on appeal. (*In re Marriage of Brockman* (1987) 194 Cal.App.3d 1035, 1041–1042.) But, because Thaler was awarded less than he demanded (the 4 million Trellis shares), he is considered an aggrieved party and may appeal. (*Barham v. Southern Cal. Edison Co.* (1999) 74 Cal.App.4th 744, 751.)

9

It appears many critical decisions were made during unreported chambers' conferences or hearings. Our task is to resolve the issues presented without getting into the weeds of the many procedural deficiencies and inconsistencies that make this case so convoluted. With that in mind, rather than address the opposing parties' appeals separately, we consider them together, examining the challenged rulings on their posttrial motions.

## I. Denial of Thaler's New Trial Motion on His Breach of Fiduciary Duty Claim

Thaler seeks remand for a new trial on his breach of fiduciary duty claim. He contends the trial court erred by having the claim tried by a jury rather than by the court under Delaware law. Trellis and Clark counter the "gist" of the claim is legal, and the jury trial was proper. We conclude Thaler's contentions have been forfeited.

The internal affairs doctrine provides the substantive law of the state of incorporation governs a corporation's internal affairs. (*Lidow v. Superior Court* (2012) 206 Cal.App.4th 351, 358–359; see Corp. Code, § 2106.) However, the reach of the doctrine does not extend to procedural laws. It does not apply in deciding an action is either legal (triable by jury) or equitable (triable by the court). (*Central Laborers' Pension Fund v. McAffee, Inc.* (2017) 17 Cal.App.5th 292, 346 (*Central Laborers' Pension Fund*).)

In *Central Laborers' Pension Fund*, *supra*, shareholders of a Delaware corporation sought damages for the directors' breach of fiduciary duty. (17 Cal.App.5th at pp. 309–310, 346.) The trial court denied their request for a jury trial, and the shareholders appealed. (*Id.* at p. 344.) On appeal, the parties disagreed over whether the shareholders were entitled to a jury trial. (*Ibid.*)

10

The appellate court framed the issue as whether the shareholders' "action for breach of fiduciary duty, brought under Delaware law, is legal or equitable in nature under California law." (*Id.* at p. 346.)  The court examined the "gist" of the action—the nature of the rights involved and the facts of the particular case.  The court determined the claim was equitable in nature and not triable by a jury even though the shareholders sought compensatory damages.  (*Id.* at pp. 346–350.)  The court observed Delaware substantive law supplied " ' "the relevant corporate governance general standard of care." ' " (*Central Laborers' Pension Fund,* at p. 346.)

Thaler argues the trial court wrongly rejected his argument that *Central Laborers' Pension Fund, supra*, 17 Cal.App.5th 292 requires a bench trial on his equitable claim of breach of fiduciary duty under Delaware law.  Instead, the trial court characterized the claim as "the tort of breach of fiduciary duty" and had it tried by a jury.  (See *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086 ["a breach of fiduciary duty is a species of tort"].)  As noted, the jury was instructed and rendered a verdict in Thaler's favor for compensatory damages under California law.  (CACI Nos. 4100, 4200; see *Fantozzi Bros. v. San Joaquin Tomato Growers Inc.* (2011) 201 Cal.App.4th 330, 333 [breach of fiduciary duty claim submitted to a jury]; Civ. Code, § 3333 [damages for breach not arising from contract].)  Yet, the trial court subsequently agreed with the parties that Delaware substantive law applied "because Trellis is an entity formed in Delaware."  (See Discussion, *post*.)

The only filings by Thaler to indicate the nature of his breach of fiduciary duty claim are his cross-complaint and trial brief.  Thaler's cross-complaint sought compensatory and

11

punitive damages for Clark's breach. The pleading did not seek rescission or demand a jury trial. Thaler did not move to strike Trellis's and Clark's jury trial demand. Thaler's trial brief sought declaratory relief as a remedy for Clark's breach. Thaler asserted he was entitled to "a judicial declaration" that (1) Clark's "actions were unlawful and voidable," and (2) he retained his 4 million shares of Trellis stock. Alternatively, Thaler argued he was entitled to damages for Clark's breach.[8]

Although Thaler challenges the trial court's rejection of *Central Laborers' Pension Fund, supra*, 17 Cal.App.5th 292, he has not provided an adequate record to determine whether reversal on that ground is warranted. The record on appeal does not contain a transcript or minute order of a hearing on that issue or any issues preceding the jury trial. Presumably, such issues were the subject of unreported hearings or discussions. Thus, we do not know how and why the substantive and procedural aspects of the trial were determined.

We do not even know if Thaler's *Central Laborers' Pension Fund* argument was considered by the trial court. Indeed, a comment by the court suggests there was a consensus at least on the nature of the breach of fiduciary duty claim. In the statement of decision, the court observed: "The parties agreed that their four remaining legal causes of action [including breach of fiduciary duty] would be tried to a jury."

---

[8] Thaler's cross-complaint sought a declaration of his rights under the RSPA against Trellis, not Clark. Further, Thaler does not assert alternative remedies against Clark in his cross-complaint. Whether Trellis and Clark objected to these different theories as outside Thaler's pleadings is unknown.

In any event, our role is not to engage in speculation or piece together what happened in the trial court. We are unable to evaluate the court's decision to have a jury trial under California law on Thaler's breach of fiduciary claim. We thus deem Thaler's argument forfeited. (See *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [when record is inadequate for meaningful review, appellant defaults and trial court's decision is affirmed].)

## II. Trial Court's Equitable Declaratory Relief Award

Albeit for different reasons, the parties agree the trial court erred in awarding Thaler equitable declaratory relief of Trellis shares. Thaler argues it was not the equitable relief to which he was entitled had there been a bench trial under Delaware law. Trellis and Clark argue the award was contrary to the jury's finding that Thaler was terminated for cause under the RSPA. The parties are correct for the wrong reasons. No valid basis existed for declaratory relief of any kind as a matter of law.

Whether declaratory relief is appropriate is subject to a two-step inquiry. The first step considers whether "a probable future dispute over legal rights between parties is sufficiently ripe to represent an 'actual controversy' within the meaning of the statute authorizing declaratory relief (Code Civ. Proc., § 1060), as opposed to purely hypothetical concerns." (*Steinberg v. Chiang* (2014) 223 Cal.App.4th 338, 343.) "A controversy is ripe when it has reached, but has not passed, the point that the facts sufficiently have congealed to permit the court to issue a useful decision. [Citation.] The purpose of the declaration is to allow the parties to shape their conduct to avoid a breach. [Citation.] There is no basis for declaratory relief where only

13

past wrongs are involved." (*Cordoba Corp. v. City of Industry* (2023) 87 Cal.App.5th 145, 157.)

Another first-step consideration is whether an ongoing relationship exists between opposing parties. Declaratory relief is not appropriate when " 'all relationship between the parties has ceased to exist and there is no conduct of the parties subject to regulation by the court.' " (*Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 367; *Baldwin v. Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 408 [affirming trial court's sustaining of a demurrer where only past events were at issue between parties without a continuing relationship].) The trial court's first-step determination whether an actual controversy exists is a question of law that we review on appeal. (*Steinberg v. Chiang, supra,* 223 Cal.App.4th at p. 343.)

The second step of the inquiry assesses "[w]hether such [an] actual controversy *merits* declaratory relief as necessary and proper (Code Civ. Proc., § 1061)." (*Steinberg v. Chiang*, *supra*, 223 Cal.App.4th at p. 343.) This is within the trial court's sound discretion "except in the extreme circumstances where relief is 'entirely appropriate' such that a trial court would abuse its discretion in denying relief . . . or where relief would *never* be necessary or proper." (*Ibid.*) The latter is the case here.

The statement of decision fails to show the trial court engaged in the requisite two-step inquiry for declaratory relief. The court acknowledged the litigation had commenced "long after Thaler was terminated and the alleged wrongs were committed." Nonetheless, the court believed "both sides [were] urg[ing] the Court to determine how many Trellis shares Thaler is entitled to retain." The court came up with "534,000 shares of Trellis

14

stock—the amount originally offered by Clark upon Thaler's termination." The award was later increased to 583,333 shares to correct a mathematical error.

Declaratory relief is not proper here as matter of law. No actual controversy existed between the opposing parties. First, as the trial court observed, the parties' respective pleadings only called for a declaration as to past wrongs—Thaler's termination and the repurchase of his outstanding shares—for which they have accrued causes of action. The underlying facts "congealed years ago, and the controversy is stale." (*Cordoba Corp. v. City of Industry, supra,* 87 Cal.App.5th at p. 157.) The opposing parties also failed to allege any continuing business relationship between them that would be clarified and stabilized through declaratory relief. Significantly, in seeking declaratory relief, Trellis alleged after Thaler was fired, he "continued [a] spiteful smear campaign" against the Company, which showed not only the end of any business relationship, but also the unlikelihood it would be revived under the circumstances.[9] Thaler's award of 583,333 shares of Trellis is vacated.

We are troubled by Thaler's attempted use of the declaratory relief action as a "do over" remedy for his breach of fiduciary duty claim. Declaratory relief "should not be used for the purpose of anticipating and determining an issue which can be determined in the main action. The object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of

_____

[9] Trellis's declaratory relief action alleged: "Thaler's letter of February 12, 2019 and continued spiteful smear campaign continues to damage Trellis'[s] reputation and creates an unfavorable environment to raise additional investment capital."

15

identical issues." (*General of America Ins. Co. v. Lilly* (1968) 258 Cal.App.2d 465, 470.)

## III.   Denial of Thaler's Request for Additional Attorney Fees

After being awarded Trellis shares in the declaratory relief action, Thaler sought reasonable attorney fees.  The trial court agreed Thaler merited attorney fees for having prevailed on the unpaid wages claims under Labor Code section 1194.  The court awarded Thaler $48,706.00 in fees and $41,195.82 in costs.  The court denied Thaler's request for attorney fees for having recovered Trellis shares in the declaratory relief action.

Thaler insists the trial court erred.  He posits as the prevailing party in "an action brought for the nonpayment of wages" under Labor Code section 218.5, he was entitled to attorney fees.  Thaler defines "wages" to include the awarded shares of Trellis stock.  He maintains we should remand for the trial court to recalculate additional attorney fees for his "stock wages claim."  Trellis and Clark disagree.  We do not reach this issue.  Our decision to vacate the award of Trellis shares defeats Thaler's argument.

## IV.   Denial of Clark's Motion for Judgment Notwithstanding the Verdict

Clark contests the trial court's denial of her motion for judgment notwithstanding the verdict on Thaler's breach of fiduciary duty claim.

" 'A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support.' [Citations.]  On appeal from the denial of a motion for judgment notwithstanding the

16

verdict, we determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's verdict. [Citations.] If there is, we must affirm the denial of the motion. [Citations.] If the appeal challenging the denial of the motion for judgment notwithstanding the verdict raises purely legal questions, however, our review is de novo." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138; see *Licudine v. Cedars Sinai Medical Center* (2016) 3 Cal.App.5th 881, 890.)

Preliminarily, Thaler concedes in his respondent's brief that he made an election of remedies. Specifically, the brief states: "Thaler made an election of remedies to choose the trial court's equitable relief over the jury's monetary relief. Thus, there was no jury verdict for the trial court to set aside because Thaler rejected the jury's award." Thaler correctly points out the jury's verdict on the breach of fiduciary duty claim was not part of the final judgment. As a consequence of our vacating Thaler's award of Trellis shares and his election to reject the $600,000 in compensatory damages, the breach of fiduciary duty verdict against Clark is moot.

Turning to the merits of Clark's motion: At the hearing, the opposing parties differed over the application of Delaware's business judgment rule.[10] Clark argued the rule insulated her from liability for breach of fiduciary duty. Thaler countered the

---

[10] Clark, Thaler, and the trial court agreed Delaware's business judgment rule applied. "The rule creates a presumption 'that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the corporation.'" (*Polk v. Good* (1986) 507 A.2d 531, 536.)

rule was inapplicable, and the trial court agreed. The court concluded Clark had a conflict of interest; finding she benefited personally and financially in "firing Thaler and taking his shares" "separate from any benefit that might accrue for Trellis."

Clark maintains the trial court erred in concluding Delaware's business judgment rule did not shield her from being liable for breach of fiduciary duty.

At trial, the jury was instructed to decide whether Clark breached her fiduciary duty of loyalty by "knowingly act[ing] against . . . Thaler's interests in connection with terminating him from Trellis and repurchasing his shares."[11] The conditions

---

[11] The jury was charged with CACI Nos. 4100 and 4102.

CACI No. 4100 reads: "A corporate officer/director owes what is known as a fiduciary duty to the shareholders of the corporation. A fiduciary duty imposes on a corporate officer or director a duty to act with the utmost good faith in the best interests of the shareholders."

CACI No. 4102 reads: "Andrew Thaler claims that he was harmed by Nicole Clark's breach of the fiduciary duty of loyalty. A corporate officer/director owes the corporation's shareholders undivided loyalty. To establish this claim, Mr. Thaler must prove all of the following:

"1. That Ms. Clark was an officer or director of Trellis;

"2. That Mr. Thaler was a shareholder of Trellis;

"3. That Ms. Clark knowingly acted against Mr. Thaler's interests in connection with terminating him from Trellis and repurchasing his shares;

"4. That Mr. Thaler did not give informed consent to Ms. Clark's conduct;

"5. That Mr. Thaler was harmed; and

"6. That Ms. Clark's conduct was a substantial factor in causing Mr. Thaler's harm."

18

governing Thaler's termination from Trellis and the repurchase of his shares are set forth in the RSPA. Those conditions include Trellis's contractual right to redeem Thaler's stock in the event he is terminated for cause. This is a right Thaler agreed to when he executed the RSPA. Nothing in the record shows Thaler denied signing the contract or attacked its validity.

The jury found Thaler was terminated for cause from as defined under either Clause I or Clause II of the RSPA. This means the jury found Thaler either willfully and continually failed to substantially perform his Company duties after the board advised him to do so, or he committed "willful fraud, willful misconduct, dishonesty or other intentional action," "materially injurious to the Company." The jury further found Clark did not possess 100 percent of the Trellis shares when Thaler was terminated. This means there was no accelerated vesting of Thaler's shares upon his termination. The trial court agreed with these findings. Thaler has not disputed them on appeal.[12]

Thus, the issue before this court is whether Clark is liable for breaching her fiduciary duty in connection with Thaler's termination for cause and repurchase of his shares *pursuant to the RSPA*.

Looking to the business judgment rule, we rely on California law rather than Delaware law. The versions of the rule in the two jurisdictions are nearly identical. However, the

---

[12] At trial, Thaler maintained that Clark owned 100 percent of Trellis shares when he left, because Techstars did not have a valid ownership interest in its shares. Thaler has abandoned this argument on appeal. (See *Womack v. San Francisco Community College Dist.* (2007) 147 Cal.App.4th 854, 859–860.)

19

RSPA's choice of law provision requires that California law govern the validity of the parties' performance under the agreement.[13]

California's business judgment rule is a presumption that, in making a business decision, corporate directors act on an informed basis, in good faith, and with the honest belief the action taken is in the best interests of the corporation. (*Katz v. Chevron Corp.* (1994) 22 Cal.App.4th 1352, 1366; Corp. Code, § 309.) A hallmark of the rule is when its requirements are met, a court will not substitute its judgment for that of the corporation's board of directors. (*Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 257.)

The trial court ruled the business judgment rule did not apply due to Clark's conflict of interest. "The conflict-of-interest exception to the business judgment rule arises when the interests of the individual decision makers diverge from the interest of the enterprise as a whole. A classic example is when directors, faced with a merger, adopt defensive measures but 'might be acting to

---

[13] The RSPA's choice of law provision provides: "11. **Miscellaneous** [¶] (a) **Governing Law.** The validity, interpretation, construction and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law." (*Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1188 [Notwithstanding the internal affairs doctrine, "[p]rovided the parties or their transactions have a substantial relationship to the state whose laws they selected, or some other reasonable basis for the parties' choice of law exists, California courts will [generally] enforce a choice-of-law provision."].)

protect their own interests rather than those of the corporation and shareholders.' [Citation.] This situation sparks the fear the individual decision makers are not to be trusted, for they might be serving their self-interest at the expense of the interests of the entity and its owners, like the shareholders. When the decision makers' personal interests conflict with the enterprise's interests, the business judgment rule does not apply." (*Tuli v. Specialty Surgical Center of Thousand Oaks, LLC* (2024) 105 Cal.App.5th 997, 1011.)

Based on our independent review, we conclude the conflict-of-interest exception does not apply here. The jury's uncontested finding was that Thaler was terminated for cause within the meaning of the RSPA. Clark's ousting of Thaler either for consistently refusing to do his job or intentionally harming the Company is a classic exercise of business judgment. Far from conflicting with Clark's personal interests, her decision to terminate Thaler was in the best interests of Trellis. Whatever personal animus Clark had for Thaler, the jury agreed with her contention at trial that it was her need to protect the Company from Thaler's misconduct that led to his termination. Clark's motion should have been granted.

## V. Denial of Thaler's Motion for Judgment Notwithstanding the Verdict

At trial, the jury was instructed it had to decide whether Thaler intentionally interfered with the SAFE investment contracts between Trellis and Ben Weinstein, Paulwei Wang, and Kevin Samy. (CACI No. 2201.) The jury rendered a verdict in favor of Trellis on that claim, which was adopted by the trial court. Thaler's motion for judgment notwithstanding the verdict on the claim was denied. Thaler challenges that ruling.

21

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 (*PG&E*).)

As he did before the trial court, Thaler argues the jury's verdict violates public policy under *PG&E* and lacks substantial evidence to support actual or punitive damages. We address each contention in turn.

The public policy to which Thaler refers is free access to the courts. In *PG&E,* the defendant, an investment brokerage firm, induced a county water agency to bring a declaratory relief action to determine whether the agency could legally terminate its contract to sell water to PG&E. If the contract was terminated, the investment firm stood to gain financially by placing the agency's hydroelectric power contract with another utility at a higher price. PG&E filed a parallel lawsuit against the investment firm alleging the firm's conduct in encouraging and financing the agency's declaratory relief action amounted to intentional interference with contractual and business relations. (*PG&E, supra,* 50 Cal.3d at p. 1124.) The trial court sustained demurrers to these causes of action without leave to amend and dismissed the complaint. (*Id.* at p. 1125.) The California Supreme Court affirmed these rulings, holding: "[T]o allow either cause of action to be stated when the only interference alleged is that defendant induced the bringing of potentially

meritorious litigation would be an unwarranted expansion of the scope of these torts and a pernicious barrier to free access to the courts." (*Id.* at p. 1123.)

In explaining the rationale for its holding, the Supreme Court stated "free access to the courts could be choked off" if a "person who induced another to bring a lawsuit involving a colorable claim could be liable in tort." (*PG&E, supra,* 50 Cal.3d at p. 1136.) "Our legal system is based on the idea that it is better for citizens to resolve their differences in court than to resort to self-help or force. It is repugnant to this basic philosophy to make it a tort to induce potentially meritorious litigation. [Doing so] would threaten free access to the courts by providing an end run around the limitations on the tort of malicious prosecution. (*Id.* at p. 1137.)

Thaler contends his contacts with the SAFE investors "fell well within" the public policy parameters of PG&E. Thaler maintains he was merely offering the investors friendly legal advice and assistance, which caused no negative repercussions for the Company. We agree with the trial court; Thaler's position is "fundamentally misleading." It is nothing more than a smoke screen to avoid our substantial evidence analysis. (See *Wolf v. Walt Disney Pictures & Television, supra,* 162 Cal.App.4th at p. 1138.)

The record shows that shortly after his termination, Thaler told the SAFE investors a series of lies—the Trellis team was jumping ship, no one else would invest, and the Company had no path forward—to convince them to withdraw their investments from Trellis. The day before Demo Day, Thaler falsely claimed to investors that his ouster meant they could take back their investments. By the end of the day, investors demanded that

23

Clark immediately return their funds, totaling $155,000. Thaler refused to sign a separation agreement until Clark returned the investors' money.

Thaler knew the Company did not have the funds to repay the investors. Clark was forced to come up with the funds. She ultimately took a $155,000 loan at a 2 percent interest rate from David Tannenbaum, a new Trellis employee. As security, Clark awarded Tannenbaum 1 million Trellis shares. This was ample evidence that Thaler's contacts with the SAFE investors disrupted Trellis's performance of its SAFE contracts, especially given Trellis's limited finances and upcoming Demo Day. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 56 [to establish the claim, the plaintiff need not prove that a defendant acted with the primary purpose of disrupting the contract, but must show the defendant's knowledge that the interference was certain or substantially certain to occur due to the defendant's action].)

Next, Thaler attacks Trellis's compensatory damages award. According to the record, Trellis had $140,000 in the bank on October 1, 2018. Thaler was terminated. Clark had to return the SAFE investors' $155,000, which Trellis did not have. Tannenbaum loaned Trellis the funds, which Clark secured with 1 million Trellis shares. These shares were separate from the equity Tannenbaum received as a Trellis employee. Trellis's expert witness testified the shares were valued at $340,000. Clark repaid the investors. Paul Jordan, a venture capitalist, purchased the note from Tannenbaum for $155,000.

Based on this evidence, Clark asked the jury to award Trellis $495,000 in compensatory damages—the total of $155,000 plus $340,000. Thaler then e-mailed Clark on October 9, 2018,

24

and suggested he would make Trellis's problems go away if she "change[d] [her] stance" and hired him back.

As pertinent here, the jury was instructed with a slightly modified version of CACI No. 3900 on Trellis's compensatory damages claim.[14]  Following deliberations, the jury awarded Trellis $305,000 in compensatory damages.  The jury verdict form did not have the jury list the amount of damages for each alleged harm.

Thaler does not dispute the amount of the compensatory damages award.  Rather, he argues the $155,000 loan and the 1 million Company shares or $340,000 cannot be the source of actual damages.  " 'Whether a plaintiff "is entitled to a particular measure of damages is a question of law subject to de novo review.  [Citations.]  The amount of damages, on the other hand, is a fact question . . . [and] an award of damages will not be disturbed if it is supported by substantial evidence." ' " (*Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1324.)

Compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct."  (*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.* (2001) 532 U.S. 424, 432 [149

_____

[14] "Now you must also decide how much money will reasonably compensate Trellis for the harm it suffered . . . .  This compensation is called compensatory damages.  The amount of compensatory damages must include an award for each item of harm that was caused by the wrongful conduct you found, even if the particular harm could not have been anticipated.  Trellis . . . [does] not have to prove the exact amount of damages that would provide reasonable compensation for [its] harm.  However, you must not speculate or guess in awarding damages."

L.Ed.2d 674, 121 S.Ct. 1687]; accord, *Nickerson v. Stonebridge Life Ins. Co.* (2016) 63 Cal.4th 363, 371.)  Whether Trellis was entitled to compensatory damages turned on whether it suffered financially from the SAFE investors' withdrawal of their $155,000 investment at Thaler's behest.  Our independent review of the record establishes Trellis clearly did.  Trellis was deprived of the $155,000 received from investors.  Trellis then had to give 1 million shares to Tannenbaum as collateral to pay back the investors.  Although the loan to Tannenbaum was eventually paid off, Trellis never recovered the original $155,000 investment nor the 1 million shares valued at $340,000.  Both were proper measures of Trellis's compensatory damages.  We affirm the judgment awarding compensatory damages.

Thaler also challenges the $610,000 award of punitive damages on various grounds.  This time, we agree with Thaler. Trellis did not present sufficient evidence of Thaler's financial condition to support the award.

"[A]n award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 109; see *Garcia v. Myllyla* (2019) 40 Cal.App.5th 990, 995 ["A plaintiff who seeks punitive damages ordinarily must introduce evidence of a defendant's net worth."].)  " 'Although net worth is the most common measure of the defendant's financial condition, it is not the only measure for determining whether punitive damages are excessive in relation to that condition.' " (*Doe v. Lee* (2022) 79 Cal.App.5th 612, 620; see *Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 691.)  " ' "What is required is evidence of the defendant's ability to pay the damage award," ' " regardless of the measure used.  (*Green v. Laibco, LLC* (2011) 192

26

Cal.App.4th 441, 452; see *Baxter*, at p. 680.)  A " 'plaintiff who seeks to recover punitive damages must bear the burden of establishing the defendant's financial condition.' " (*Reliant Life Shares, LLC v. Cooper* (2023) 90 Cal.App.5th 14, 42; see *Adams, supra,* 54 Cal.3d at p. 123.)

" '[I]n most cases, *evidence of earnings or profit alone [is] not sufficient "without examining the liabilities side of the balance sheet."* ' [Citation.]  ' "What is required is evidence of the defendant's ability to pay the damage award." [Citation.]  Thus, there should be some evidence of the defendant's actual wealth. *Normally, evidence of liabilities should accompany evidence of assets, and evidence of expenses should accompany evidence of income.'* " (*Doe v. Lee, supra*, 79 Cal.App.5th at p. 621; see *Baxter v. Peterson, supra,*150 Cal.App.4th at p. 680.)

Trellis did not meet its burden to prove Thaler's ability to pay punitive damages in the amount of $610,000.  The only evidence of Thaler's ability to pay was his pre-Trellis annual earnings as a computer programmer were $250,000 and his new post-Trellis annual earnings would be $315,000 per year.  Thaler earned minimum wage at Trellis as an equity employee.  Thaler testified he had spent all his 401(k) savings to live on after leaving Trellis.

Clark produced no evidence or analysis of Thaler's existing or ongoing costs or liabilities.  There is no evidence to suggest his current income would enable him to satisfy his punitive damages award while covering necessary living expenses and paying the compensatory damages.  We therefore reverse the punitive damages award for insufficient evidence.  No retrial is required. (*Doe v. Lee, supra*, 79 Cal.App.5th at p. 623.)

27

## DISPOSITION

The denial of Clark's motion for judgment notwithstanding the verdict on Thaler's breach of fiduciary duty claim is reversed. The denial of Thaler's motion for judgment notwithstanding the verdict for intentional interference with the contractual relations claim and compensatory damages award is affirmed, but the punitive damages award is vacated. The equitable declaratory relief award is vacated. The denial of Thaler's request for additional attorney fees is affirmed. Otherwise, the judgment is affirmed. Thaler is to bear costs on appeal.

NOT TO BE PUBLISHED.


LUI, P.J.

We concur:


ASHMANN-GERST, J.


RICHARDSON, J.

28